MARTIN MAAS et al., Appellants, *v.* THE MISSOURI, KANSAS AND TEXAS RAILWAY COMPANY et al., Respondents.

The T. and N. R. R. Co. executed a mortgage on its road to secure its bonds to defendant, the U. T. Co., as trustee for the bondholders, and bonds were prepared for issuing, each of which contained a clause that it should not become obligatory until authenticated by a certificate indorsed thereon duly signed by said trustee. Said bonds were signed by the proper officers of the company, but before the company's seal was affixed or the required certificate attached, a portion of them were stolen, a seal and certificate forged thereon, and the bonds sold; plaintiffs purchased them for a valuable consideration and in good faith. The T. and N. Co. was consolidated with defendant, the M., K. and T. R. Co.; by the agreement of consolidation the latter was to take up outstanding bonds of the former company, issuing its own in exchange. In an action to compel such an exchange for plaintiffs' bonds, *held,* that plaintiffs were bound by the condition in the bonds making the certificate of the trustee essential to their validity; that neither the payment of value nor good faith on their part created a cause of action; and that the defect in the bonds was not waived by the agreement of consolidation; also, that the failure of the obligor, after discovering that the bonds had been lost or stolen, to notify the public of that fact did not constitute negligence making it liable.

Also, *held,* that the plaintiffs were not entitled to have returned to them said forged bonds, which had been delivered for the purpose of exchange; that plaintiffs had no title to them, as they had never been issued or put in circulation by defendants, and so were the property of the T. and N. Co.

(Argued November 29, 1880 ; decided December 21, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made October 8, 1879, affirming a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

This action was brought to compel the delivery by defendants to plaintiffs of nine bonds of defendant, the Missouri, Kansas and Texas Railway Company, of $1,000 each, in exchange for a like number of the bonds of the Tebo and Neosho Railroad Company.

The facts found are substantially as follows: On the 1st

of June, 1870, the Tebo and Neosho Company executed a mortgage on its railroad to defendant, the Union Trust Company, as trustee to secure an issue of 2,000 bonds for $1,000 each; by the terms of the mortgage each of these bonds had to be properly signed and sealed by the railroad company, and also to be certified by the trust company to be one of the series secured by the mortgage before the bond became obligatory on the railroad company. ·Each of the bonds contained the following clause:

" This bond shall not become obligatory until it shall have been authenticated by a certificate indorsed thereon, duly signed by the trustee aforesaid." The attestation clause of each bond was as follows:

" In witness whereof, the said Tebo and Neosho Railroad Company has caused its corporate name and seal to be here-unto affixed by its president and secretary on the first day of June, 1870."

The railroad company caused the bonds to be prepared and printed on the 13th of June, 1870, and among them were the nine bonds in question. Said nine bonds, with the others, were signed by the president and secretary of .the Tebo and Neosho Company, on or before the 8th day of August, 1870, with the intent and for the purpose of being duly sealed with the seal of such company and then transmitted to the office of the trust company to be certified by said company. The corporate seal was never affixed to said nine bonds and no certificate of the trust company was indorsed thereon. They were stolen from the obligor by some unknown persons; a fabricated seal, in imitation of that upon the genuine bonds, was affixed without its order or knowledge, and the signature to the certificate of the trust company by its president was forged upon them. In that condition they were put upon the market, and in July, 1872, were purchased by the plaintiffs for a valuable consideration, and in ignorance that they were not valid bonds, from a broker claiming to own them, and who sold them as genuine bonds in all respects.

Said bonds were missed in the early part of August, 1870,

of which fact defendants were advised, but no notice was given to the public by advertisement or otherwise. In October, 1870, the Tebo and Neosho Company was consolidated with defendant, The Missouri, Kansas and Texas Railway Company, to which it transferred its franchises and property. By the consolidation agreement the latter company agreed to take up the outstanding bonds issued by the former by issuing its own bonds in exchange therefor. In July, 1872, plaintiffs left said bonds with the secretary of the M. K. and T. Co. for the purpose and with the request that they should be exchanged for its bonds in pursuance of the agreement, but said company refused to deliver its bonds therefor. Plaintiffs demanded of both defendants that such exchange should be made or that their bonds should be returned, but defendants refused to do either.

*A. R. Dyett* for appellants. There being no omission or defect on the face of the bonds affecting their validity and plaintiffs being *bona fide* holders for value the court erred in dismissing the complaint. (*Brainard* v. *N. Y. H. R. R. Co.*, 25 N. Y. 496 ; *Bank of Rome* v. *Village of Rome*, 19 id. 20 ; *Mercer Co.* v. *Hackett*, 1 Wall. 83 ; *Birdsall* v. *Russell*, 29 N. Y. 220, and cases cited by Russell, argued, 228–230, 232 ; *Finnegan* v. *Lee*, 18 How. Pr. 186 ; *Hubbard* v. *N. Y., etc., R. R. Co.*, 14 Abb. 275.) If when the bonds were signed it was intended to sign just such instruments, they are good in the hands of a *bona fide* holder for value, although stolen or otherwise fraudulently put into circulation, there being nothing on their face to excite the suspicion of ordinary men, and a purchaser of them is not required to closely or critically examine them. (*First Nat. Bk.* v. *Green*, 43 N. Y. 298 ; *Hyer* v. *Dorchester Bk.*, 11 Cush. 251 ; *Duncan* v. *Scott*, 1 Campb. 100 ; *Dutchess Co., etc., Ins. Co.* v. *Hatchfield*, 8 N. Y. Sup. Ct. 675 ; *Worcester Bk.* v. *Dorchester, etc.*, 10 Cush. 488 ; *Sybell* v. *Nat. Currency Bk.*, 54 N. Y. 288 ; *Vale* v. *Parker*, 6 Wend. 615, 620 ; *Putnam* v. *Sullivan*, 4 Mass. 45 ; *Matthews* v. *Mass. Nat. Bk.*, Am. L. Reg., March, 1875, 153 ; Parsons on Bills, 114 ; *Foster* v. *McKin-*

*non*, 314, 315, 317, *supra ;  Young* v. *Grote,* 4 Bing. 253 ; Byles on Bills [6th ed.], 292, note *a* and note 1, and *Rex* v. *Revett,* cited at p. 103; *Murray* v. *Gardner,* 2 Wall. 10 ; *Ingham* v. *Primrose,* 28 L. J. C. P. 295 ; 7 C. B. [N. S.] 82; *Montague* v. *Perkins,* 22 L. J. C. P. 188 ; S. C. Jurist, vol. 17, part 1; *Van Duzer* v. *Howe,* 21 N. Y. 531 ; *Avoden* v. *Dixon,* 6 Exch. 869 ; *Magee* v. *Badger,* 34 N. Y. 247 ; *Scholey* v. *Ramsbottom,* 2 Campb. 485; *Bk. Com.* v. *Curry,* 2 Dana, 122 ; *Moody* v. *Threhild,* 13 Ga. 55 ; *Shipley* v. *Carroll,* 45 Ill.; *Welsh* v. *Sage,* 47 N. Y. 143, 146 ; *Goodman* v. *Lenard,* 25 How. [U. S.] 343 ; *Briggs* v. *Ewart,* 51 Miss. 245 ; *Aull* v. *Colket,* 2 N. Y. Weekly Dig. 30 ; *Helvese* v. *Hibernia Bk.,* id. 417 ; *Citizens' Bank* v. *Smith,* id. 147.) It is immaterial that these bonds were not sealed by actual authority of the railroad company. (37 Me. 349 ; 12 Mich. 138 ; 3 Miss. 385 ; 19 Johns. 60 ; *Barnes* v. *Ontario Bk.,* 19 N. Y. 63 ; *Tenny* v. *E. W. Lumber Co.,* 43 N. H. 343 ; 30 Vt. 152, 159.) There being a seal affixed the presumption in law is that it is the genuine seal. (*Bowen* v. *Irish,* 6 Bosw. 263.) A *bona fide* purchaser for value has a right to rely on that presumption. (*Ledwitch* v. *McKeon,* 53 N. Y. 307; Angell & Ames on Corporations [5th ed.], § 707 ; *McWilliams* v. *Mason,* 31 N. Y. 294.) The nine bonds in question having been shown to have been in the possession of the company to be sealed and transmitted to the Trust Company to be certified, the presumption, upon the facts found, is that they were put in circulation by the president or secretary, or some other of the officers of the company, and they were, therefore, valid bonds of the company in the hands of a *bona fide* purchaser for value. (*Mechanics' Bk.* v. *N. Y. & N. H. R. R. Co.,* 34 N. Y. 30 ; *Farmers, etc., Bk.* v. *Butchers and D. Bk.,* 15 id. 125 ; 14 id. 623 ; *McWilliams* v. *Mason,* 31 id. 294, cited *supra ;  Van Duser* v. *Howe,* 21 id. 531 ; *Shotwell* v. *Mali,* 38 Barb. 445 ; *Life, etc.,* v. *Mechanics' F. Ins. Co.,* 7 Wend. 31.) But if they got into circulation by the carelessness or negligence of the officers of the company the same result follows. (*Helvese* v. *Hibernia Bk.,* 2 N. Y. Weekly Dig. 417 ; *Aull* v. *Colket,* id. 30.) The Missouri, Kansas and

Texas Company is estopped from disputing the validity of the mortgage to the extent of the nine bonds in question. (*Hartly* v. *Harrison*, 24 N. Y. foot of page 171 and page 172; *Halsey* v. *Reed*, 9 Paige, 446; *Russell* v. *Pistor*, 7 N. Y. 171; *Ritter* v. *Phillips*, 53 id. 586; *Cramer* v. *Sepper*, 2 N. Y. Weekly Dig. 589; *Freeman* v. *Auld*, 44 id. 53.) The trust created by the mortgage executed by the Missouri, Kansas and Texas Railway Co. to the Union Trust Company of February 1, 1871, even if regarded as a voluntary trust was irrevocable without the consent of the *cestuis que trust*. (*Drosier* v. *Brereton*, 15 Beav. 251; *Bunn* v. *Winthrop*, 1 Johns. Ch. 337; *Briggs* v. *Davis*, 21 N. Y. 576, 577; *Fellows* v. *Herman*, 4 Lans. 230, 242, 244.) Nor could the trustee refuse to execute it. (*Wood* v. *Wood*, 5 Paige, 596; *Griffin* v. *Ford*, 1 Bosw. 123; *Bleecker* v. *Brigham*, 3 Paige, 246; *Jones* v. *Butler*, 30 Barb. 614; Tiff. & Bull on Trustees, 536 *et in notis*.) The *cestuis que trust* have the right in equity to enforce the trust although the trust was created without their knowledge. (*Weston* v. *Barker*, 12 Johns. 276; *Moses* v. *Murgatroyd*, 1 Johns. Ch. 119; *Duke, etc.* v. *Coddington*, 3 id. 229; *Hosford* v. *Merwin*, 5 Barb. 51; Tiff. & Bull. on Trustees, 230, 231.) The bonds in question having been delivered to and received by the Missouri, Kansas and Texas Railway Co., for the purpose of being exchanged for its own bonds and delivered by that company to its own trustee for the same purpose, neither of those companies can dispute the validity of the bonds or the plaintiff's title thereto. (*Welch* v. *Sage*, 47 N. Y. 143; *Marvin* v. *Elwood*, 11 Paige, 365; *Vosburg* v. *Huntington*, 15 Abb. 254; *Rogers* v. *Weir*, 34 N. Y. 463.)

*Wheeler H. Peckham* for respondents. The bonds in question were not the bonds of the Tebo and Neosho Company until its corporate seal was affixed to them. (*Jackson* v. *Pratt*, 10 Johns. 381, 387; *Jackson* v. *Wood*, 12 id. 73; *Jackson* v. *Wendall*, id. 355; *Mann* v. *Pentz*, 2 Sandf. Ch. 271; 2 Black. Com. 306; A. & A. on Corp., §§ 216, 217, 219; *Murray* v.

*Vanderbilt*, 29 Barb. 149.) Even if the Tebo Company had sealed the bonds they would be void, because never issued or delivered by that company. (*Lansing* v. *Gaines*, 2 Johns. 302 ; *Marvin* v. *McCullum*, 20 id. 288 ; Edwards on Bills, 186 ; *The People* v. *Loomis*, 4 Den. 380, 384 ; *Coddington* v. *Gilbert*, 17 N. Y. 490 ; *Whitney* v. *Snyder*, 2 Lans. 477–8 ; *Foster* v. *McKinnon*, Law Rep., 4 C. P. 704 ; *Caulkins* v. *Whisler*, 29 Iowa, 495 ; *Wait* v. *Pomeroy*, 20 Mich. 425 ; *Bunsen* v. *Huntington*, 21 id. 415 ; *Grover* v. *Clark*, 21 La. Ann. 567 ; *Lenheim* v. *Wilmerding*, 51 Penn. St. 73 ; *Hall* v. *Wilson*, 16 Barb. 65 ; *Baxendale* v. *Bennet*, L. R., 3 Q. B. Div. 525.) The facts that defendants retained the forged bonds, and have refused to return them to the plaintiffs, present no cause of action. (*Lockwood* v. *Bull*, 1 Cow. 322 ; *Hill* v. *Covell*, 1 N. Y. 522 ; *Munger* v. *Hess*, 28 Barb. 75 ; *Nellis* v. *Bradley*, 1 Sandf. 560 ; *Wheaton* v. *Baker*, 14 Barb. 597 ; *Ross* v. *Terry*, 63 N. Y. 615 ; *Brewster* v. *Burnett*, 125 Mass. 68 ; *Ross* v. *Terry*, 63 N. Y. 615 ; *Miller* v. *Race*, 1 Smith's Lead. Cas. 736.)

DANFORTH, J. The argument of the learned counsel for the appellant was ingenious, but not sufficient to overcome the conceded facts, that upon the face of each instrument was written a declaration that " this bond shall not become obligatory until it shall have been authenticated by a certificate indorsed thereon, duly signed by the trustee aforesaid," and that those in question are not so authenticated. No argument can make the case plainer, for it cannot be denied that the Tebo and Neosho Railroad Company, when arranging the terms of a proposed contract, had an unqualified right to determine upon what condition their liability should depend, nor that a person accepting the contract with notice of that condition would be bound thereby. It is true that the bonds · are apparently authenticated in the prescribed manner, but this is apparent only. The signature is a forgery. The purchaser relied upon the implied or express assurance of his vendor, that it was genuine. He took no pains to ascer-

tain the truth of this assurance; nor was he prevented from doing so by either of the defendants. Had he asked, he would have learned the truth. From the consequence of his omission to do so, the fact that he paid value, and bought in good faith, cannot relieve him. He paid value for the bonds, but not to the defendants. He did not know or suspect that they were counterfeit, and so he bought in good faith, but nevertheless they were not genuine, and so neither the payment of value nor the innocence of his intent can help him as against the defendants. These circumstances cannot create a cause of action, when one did not in fact exist. It is claimed, however, by the learned counsel for the appellant that the negligence of the railroad company "facilitated the forgery of the certificate," and in support of that position we are referred to certain findings of the court, in substance that on or before the 8th of August, 1870, the bonds were signed by the proper officers of the railroad company, with the intent and for the purpose of being duly sealed with the seal of such company, and then transmitted to the office of the trust company to be certified; that in the early part of August they were missing, and although the defendants were informed thereof they did not notify the public they were missing, lost, or stolen, or that they had not been issued by the company. We think the trial court committed no error in refusing to find that these things constituted negligence. In what way by these acts, or this omission, was the conduct of the plaintiff influenced? It is impossible to see. It might as well be said that the organization of the company and its conduct of business in such a manner as to inspire confidence in its credit, and give its obligation value, were acts leading the plaintiff on to his injury. But none of these things are important. The plaintiff's loss is owing to his own omission of duty. The defendants had furnished an easy means by which the genuineness of the bonds could be ascertained, viz.: the existence of the certificate; and the duty of inquiry was imposed upon the purchaser. If it had been performed, the loss would not have happened. It is urged, however, by the

learned counsel for the appellant that "the certificate was not essential to the validity of the bonds as obligations of the company, but solely to render them obligatory upon the trustee in the mortgage as one of the bonds secured thereby." Such a construction is opposed to the plain language of the condition, and it cannot be adopted. The declaration is that "this bond shall not become obligatory until," etc. It could, in no event, become obligatory upon any person or corporation except the one named as obligor, and who executed it. The act of the trustee, when performed, was only to authenticate, that is "to determine as real and true;" until performed the bonds rested in "supposition;" when performed its effect was to render them obligatory, and pronounce them genuine. As it has not been performed, the bonds were not complete or perfect, and have not become the contracts of the railroad company. These considerations apply also to the proposition of the learned counsel for the appellants, that the defect above indicated has been waived by the agreement of consolidation between the Tebo and Neosho Railroad Company, and the Misssouri, Kansas and Texas Railway Company, and the new mortgages issued by the latter company in furtherance of that agreement. For there is thus provided means of retiring only such bonds as had been issued by the Tebo and Neosho Railroad Company, and were then outstanding. It has no application to any bond not issued by the company, or to simulated or forged bonds, or to any bond not "obligatory" upon it. The plaintiff's bonds, therefore, are not within its terms.

The views so far expressed cover the case made by the complaint, but it is urged by the learned counsel for the appellant that they were entitled to have returned to them the Tebo and Neosho bonds, or as that was refused, to their value. It might be sufficient to say that such a claim is not within the complaint. The action is upon the contract in the agreement of consolidation above referred to, and the judgment asked is that the defendants deliver nine bonds of the Missouri, Kansas and Texas Railway Company, or the value thereof; the form of the prayer

might not be material, but it is in pursuance of the complaint. A cause of action and demand for such exchange is alleged, but no demand for a return of the Tebo and Neosho bonds. To give the relief now suggested requires that the character of the action should be changed to one of tort. The plaintiff is not entitled to a return of the forged bonds. Upon their face they purport to be the obligation of the Tebo and Neosho Company, but are not. They were made to appear so by the commission of a crime. Before the alteration or forgery they were the property of the Tebo and Neosho Railroad Company, and it was intended they should come to the hands of the Union Trust Company. They are there now. The plaintiff has no title to them, for they were never issued or put in circulation by either of the defendants.

Without considering other questions in the case also urged against the plaintiff's right of recovery, we are of opinion that for the reasons above suggested the judgment of the Supreme Court was right, and should be affirmed with costs.

All concur.

Judgment affirmed.