24155. CITIZENS & SOUTHERN NATIONAL BANK *v.* TRUST COMPANY OF GEORGIA *et al.*

DECIDED FEBRUARY 26, 1935.

*Alston, Alston, Foster & Moise,* for plaintiff.

*Little, Powell, Reid & Goldstein, Spalding, MacDougald & Sibley, Harold Hirsch, Marion Smith, D. F. McClatchey Jr.,* for defendants.

MACINTYRE, J. This is a suit brought by the Citizens & Southern National Bank against the Trust Company of Georgia and the Coca-Cola Company, alleging damages arising out of the fraudulent issuing of a stock certificate. The certificate of stock in question was as follows:

"Number G 3415, shares 100. Incorporated under the laws of the State of Delaware. The Coca-Cola Company.

"This certificate is transferable either in New York or Atlanta, Ga. This is to certify that Wesley Shropshire is the owner of one hundred shares of the fully paid and non-assessable common capital stock of the Coca-Cola Company, without nominal or par value, transferable on the books of the corporation by the holder hereof in person or by duly authorized attorney upon surrender of this certificate properly endorsed. For a full and complete statement of the rights of the holders of common stock, reference is hereby made to the certificate of incorporation of the corporation, a copy of which is on file in each principal office of the corporation, and in the office of the Transfer Agent. This certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar. In witness whereof The Coca-Cola Company has caused its corporate seal to be hereunto affixed and this certificate to be signed by its duly authorized officers and dated January 10, 1928.

F. J. Blagden, Secretary, Treasurer. C. C. Gifford, Vice President.

"Countersigned: January 11, 1928. Trust Company of Georgia (Atlanta, Ga.), Transfer Agent, By Wesley Shropshire, Assistant Secretary.

"Registered: Jan. 11, 1928. The Atlanta & Lowry National Bank (Atlanta, Ga.), Registrar. By Fred McSwain, Assistant Cashier."

This stock-certificate had attached thereto an assignment and transfer in blank signed by Wesley Shropshire. Wesley Shropshire was an assistant secretary of the Trust Company of Georgia, and, as such assistant secretary, was authorized to affix the signature of the Trust Company of Georgia, as transfer agent, to the certificates for the common stock of the Coca-Cola Company. When the Coca-Cola Company delivered to the Trust Company of Georgia the stock certificates, signed in blank by its officers, for the purpose of evidencing the said stock dividend, more of such executed certificates were delivered than were necessary to evidence said stock dividend. The Trust Company of Georgia continued to keep said excess certificates in the vault of the Trust Company of Georgia in its basement, but not under lock and key, and accessible to all of the employees of both the Trust Company of Georgia and the Atlanta and Lowry National Bank.

Two of the grounds of the general demurrer were: (1) The defendants were not liable, because the signature of Fred McSwain on behalf of the Atlanta and Lowry National Bank had been forged by Wesley Shropshire. This was an intervening criminal act and, therefore, there was no relation of proximate cause. (2) The Citizens & Southern Bank was put on notice to make inquiry as to the genuineness of the stock certificate No. G-3415 because it was issued in the name of Wesley Shropshire and Wesley Shropshire was one of the parties who signed the certificate. The general demurrer was sustained.

In the instant case it was provided in the face of the certificate and above the name of all of the apparent signatures that the certificate should not be valid until countersigned by the transfer agent (Trust Company of Georgia) and registered by the registrar (Atlanta and Lowry National Bank). The certificate had attached the genuine signature of the Coca-Cola Company and the genuine signature of the Trust Company of Georgia, transfer agent, by Wesley Shropshire, assistant secretary, and had entered thereon "Registered; Jan. 11, 1928. The Atlanta & Lowry National Bank, Registrar, by Fred McSwain, assistant cashier." The name of Fred McSwain was forged by Shropshire.

"The doctrine of implied agency, arising out of negligence, has

its true basis in the principle of estoppel in pais; and is based upon the injustice of allowing a party to be the author of his own misfortune and then to charge the consequences upon others; and it implies an act in itself invalid, and a person forbidden, for equitable reasons, to set up its invalidity." New York &c. R. Co. v. Schuyler, 34 N. Y. 30.

The certificate was signed in blank by the duly authorized officers of the Coca-Cola Company and then entrusted to the Trust Company of Georgia, as its transfer agent, to be delivered to stock-holders, as dividends, when directed to do so by the Coca-Cola Company, and when signed by the transfer agent and registered by the registrar. If there had been no requirement that the registrar, the Atlanta and Lowry National Bank, should sign the same before the certificate should be valid, and Shropshire had fraudulently filled in the blank with his own name, and used it for his own purposes, this would have been an act in itself invalid, but the defendants, having clothed Shropshire with the power calculated to induce third persons to believe he had due authority to sign the certificate and put it upon the market, or in circulation, would have been liable to the purchaser without notice for value. The defendants would have been forbidden, for equitable reasons, to set up its invalidity. The doctrine of implied agency, arising out of negligence, would have applied.

With reference to the fraudulent use of stock certificates, Judge O'Brien, speaking for the court, in Jarvis v. Manhattan Beach Co., 148 N. Y. 652, 43 N. E. 68, 31 L. R. A. 776, 51 Am. St. R. 727), said: "The general rule—that the principal is liable to a third person in a civil action for the fraud or other malfeasance of his agent, perpetrated by the latter in the course of his employment, although the principal did not authorize, justify or know of the misconduct—is applicable to a corporation in the case of a fraudulent issue of stock certificates by its agent. While corporation stock certificates do not possess all the qualities of commercial paper, they do possess some of them, and innocent parties dealing in them will be protected upon analogous principles, and, in a proper case, will be entitled to compel recognition as stockholders, where power exists to issue new certificates, or to indemnify if there is not."

Under the doctrine of implied agency and the application of the principle of estoppel to the situation, an innocent party will be

protected in a proper case. "The case of McNeil *v.* Tenth National Bank [46 N. Y. 325] is a leading case on the subject, and marks the limit to which the court has hitherto gone in subordinating the rights of the true owner of a stock certificate to the title of a transferee derived under one who, being in possession of the certificate by the consent of the true owner, has transferred it in fraud of his rights. That case holds that an agent to whom the owner has delivered a certificate of stock duly indorsed for transfer, with a limited power of disposition for a special purpose, may bind the title thereto as against the true owner by transferring it to a bona fide transferee who has no notice of the limitations of the agent's authority, although the transfer was made for an unauthorized purpose and with the intention on the part of the agent to commit a fraud upon his principal." Knox *v.* Eden Musee Co., 148 N. Y. 441, 454 (42 N. E. 988, 31 L. R. A. 779, 51 Am. St. R. 700). In Titus *v.* Prest., etc., 61 N. Y. 237, McClure, the treasurer of the defendant, presented to the plaintiff two certificates of defendant's stock, signed by the President and by McClure, as treasurer, and having the seal of the company attached. Each of the certificates certified that McClure was the owner of 500 shares of the stock of defendant; and upon the credit of these certificates, which were offered as collateral security to the note of McClure, he obtained from the plaintiff a sum of money, the plaintiff at the time of receiving the said certificates knowing that the McClure mentioned in the body of said certificates was the same person who signed the same as treasurer, and that the defendant had no knowledge of the issuance of these certificates and the same were issued fraudulently by its treasurer. The court there held: "Where the treasurer of such a corporation, upon the faith and pledge as collateral of spurious certificates, drawn up and executed in the form and manner prescribed by the by-laws (the signature of the president having been negligently affixed), purporting on their face to be of stock owned by the treasurer, obtained a loan of one acting in good faith and in ignorance of the fraud, that there was nothing upon the face of the certificate to notify the lender of any defect in the title; and that the corporation was liable to him for the damages."

The Supreme Court of the United States in the case of Moores *v.* City National Bank, 111 U. S. 156, 168 (4 Sup. Ct. 345, 28

L. ed. 385), distinguished the Titus case, supra, from the case under consideration, in that in the Titus case the certificate was issued to McClure, the treasurer, and in that form transferred as security for a loan to McClure; while in the Moores case, Moores approached the plaintiff to borrow money for his own use and delivered a certificate made out in the name of the plaintiff the lender (not Moores, the borrower), which stated that the shares were transferrable only on the books of the bank and on a surrender of the former certificates. The Supreme Court in the Moores case distinguishes it from several other New York cases in which the certificate has been purchased in the market. We think it should also be noted that in the Moores case the certificate had not been put in circulation at the time it was delivered to the bank, while in the case sub judice, the certificate had been previously transferred in blank and pledged to another bank for a loan and the plaintiff was taking over the loan of the other bank and accepted the certificate which the other bank had accepted presumably in due course of trade. In the Moores case, where the new certificate was issued to the lender, the court held it was sufficient to put the plaintiff on notice of inquiry; and in the Titus case, where the certificate was issued to the borrower, and not to the lender, the court held the plaintiff was entitled to recover. In Farrington v. South Boston R. Co., 150 Mass. 406 (23 N. E. 109, 5 L. R. A. 849, 15 Am. St. R. 222), the court said: "The present case can not be distinguished in principle from Moores v. Citizens National Bank, 111 U. S. 156. In that case, Mr. Justice Bradley dissented, and the decision has been the subject of some criticism." It will be noted that in the Farrington case the treasurer fraudulently signed, and affixed the seal of the corporation, and in his own handwriting filled out in the usual form one of the certificates in the name of a creditor of his for borrowed money and gave it as security for a debt. This was a new certificate which was issued to the creditor by the borrower, an officer who signed it, after the bargain had been made. The court held in the Farrington case that the plaintiff was put upon inquiry and could not recover.

In discussing the question as to the duty of the purchaser of stock from one in whose name the new certificate was issued, and whose signature is necessary to the new certificate, without taking the precaution to see that it is duly transferred and the old cer-

tificate surrendered, the court in the comparatively recent case of Williams v. Terminal Hotel Co. (Tex. App.) 280 S. W. 505, 511, states that "generally speaking, it is more prudent to buy the original certificate, owned by the selling stockholder, and have him execute an assignment thereon. Unless that precaution be used, one ordinarily can not be said to have exercised due care." The mere fact that a certificate is issued in the name of Shropshire, the assistant secretary, one of the persons who signed it, is not, of itself, sufficient to put a party on inquiry as to whether he was the rightful owner of it. C., N. O. & T. P. Ry. Co. v. Citizens National Bank, 56 Ohio St. 351 (47 N. E. 249, 43 L. R. A. 777).

Where the certificate was issued in the name of Shropshire, the assistant secretary, transferred by him in blank to the Fulton National Bank to secure a loan, and where in taking over the loan, the Citizens & Southern National Bank, the plaintiff, accepted this same certificate as security for its loan, the plaintiff was not put on notice requiring inquiry as to whether Shropshire was acting in the course of his employment. However, irrespective of whether the certificate was issued to one not connected with the corporation or to one of the officers of the corporation who signed it, it was the duty of the plaintiff not to accept forged paper.

We do not think that it can be suggested that any business man owes to another the duty of seeing that another does not forge his name. On the contrary, the duty rests upon him who accepts the forged paper to verify the signature to that paper. In the case sub judice, we think the language of the court in the case of Dollar Savings Fund & Trust Co. v. Pittsburgh Plate Glass Co., 213 Pa. 307 (62 Atl. 916), is applicable to the facts in this case: "It would be the duty of the court to say that, even assuming negligence on the part of defendant in dealing with the certificate, the proximate cause of the loss was the failure of plaintiff to verify the signatures to the paper—a duty which rested on it. All the cases show that it is only when a party holds a certificate, to which is attached the genuine signatures of the parties who must sign to make it good, that the question arises as to whether or not the company is liable to him because of negligence, when the certificate is in fact false by reason of having been unproperly or fraudulently issued. The doctrine is stated thus in Allen v. South Boston Ry. Co., 150 Mass. 200 (22 N. E. 917, 5 L. R. A. 716, 15 Am. St.

R. 185), viz.: 'The ground upon which a corporation is held liable to a bona fide purchaser for value of false certificate of its stock issued under its seal, signed by the proper officers and apparently genuine, is that the certificates are statements by the corporation of facts which it is its duty to know, and which can not well be known to the purchasers.' So in Railway Co. *v.* Citizens National Bank, 56 Ohio St. 351 (47 N. E. 249, 43 L. R. A. 777), and Railroad Co. *v.* Schuyler, 34 N. Y. 30, the obligation of the purchaser to make inquiry as to the genuineness of the signatures is recognized, and it is only when the signatures are found to be genuine that the duty of the company to stand by its representations comes into play, or that its duty to the purchaser to take care as to the issue of the certificate arises," and where a corporation wishes to take precaution to provide against an act or series of acts among which is forgery, which are apparently transacted in good faith, and intended to be followed by their ordinary legal consequences, but which in reality conceal a fraudulent purpose of the party to gain thereby some advantage to which he is not entitled, it has a right to insert, in the face of the certificate, the condition that "this certificate is not valid until countersigned by the transfer agent and registered by the registrar," and, while the corporation stated over its signature that Shropshire was the owner of 100 shares of stock, it further stated that the certificate was not a complete certificate until it had the signature of the transfer agent and the registrar, and the plaintiff was thus put upon actual notice that the certificate was not binding if it did not have attached thereto the genuine signature of the Coca-Cola Company, the Trust Company of Georgia, and the Atlanta and Lowry National Bank. Under the certificate, the signature of the Atlanta and Lowry National Bank was just as necessary to the completion of the certificate as was the signature of the Coca-Cola Company or the Trust Company of Georgia. Until the plaintiff shows a certificate to which are attached the genuine signatures of all of the parties, whose signatures are necessary to its validity, he is not entitled to raise the question as to negligence of the defendants. If the signatures are genuine, he may well say that it is the company's business, not his, to know whether the issue of the certificate was without authority or whether it was by negligence put into circulation. Again we adopt the language of the court in the

Pennsylvania case cited, supra, as applicable in this case: "When the plaintiff fails in a duty of care which he owes himself, fully as imperative as any owed to him by the defendant's, and thus, and thus alone, brings himself within the scope of the effects of the defendant's negligence, he can not be heard to say that defendant's negligence, and not his own, was the proximate cause of his loss."

The fact that the Trust Company of Georgia kept this stock in the vault of its basement, not protected by lock and key, but accessible to every employee of the Trust Company of Georgia and also to the employees of the Atlanta and Lowry National Bank, which occupied quarters connected with the quarters of the Trust Company, was not such negligence under the facts in this case as would authorize a recovery. No agent of the Atlanta and Lowry National Bank had anything expressly or impliedly to do with the stock in question, and if the Trust Company of Georgia had kept the certificate in a separate building, under many locks and keys, and in no way accessible to the employees of the Atlanta and Lowry National Bank, this would not have prevented Shropshire from forging the Atlanta and Lowry National Bank's signature. What effect then could the keeping of stock in the vault, accessible to the employees of the Atlanta and Lowry National Bank, have upon the forging of the signature of the Atlanta and Lowry National Bank to the certificate in the possession of the Trust Company of Georgia? None. The Atlanta and Lowry National Bank, nor any of its employees, ever had possession of the certificate. The fact that the Trust Company of Georgia kept this stock in its vault, which was accessible to Shropshire, the assistant secretary of the Trust Company of Georgia, would not estop the defendants to deny the genuineness of the signature of Fred McSwain as against the Citizens & Southern National Bank, whose duty it was to satisfy itself as to the genuineness of such signature. The case of *Capital City Brick Co.* v. *Jackson, 2 Ga. App.* 771 (59 S. E. 92), has been cited. There is a material distinction between that case and this. In that case the president signed a note, "Capital City Brick Company, per T. F. Stubbs, Pres.," payable to himself, T. F. Stubbs. The note was endorsed in blank by Stubbs and transferred to the plaintiff in payment of a pre-existing debt which Stubbs owed him. The court held: "A bona fide holder of a promissory note executed by an officer in the name of the corporation, and payable to the

officer executing it, as an individual, in legal contemplation, can not exist. The person and the subject matter are in positive contradiction." Such a note was out of the ordinary course of business and contrary to business and legal rules and not within the scope of the agency. It was entirely unnecessary to the orderly course and management of the business of the bank. On the other hand, certificates of stock are a necessary part of the machinery by which the business of every corporation is carried on. They are issued to every stockholder as evidence of his stock, to the officers as well as to the other stockholders. C., N. O. & T. P. Ry. Co. *v.* Citizens' National Bank, supra; 5 Lansing (N. Y.), 254. The defendant is not estopped by failure to give notice of the fact that a certain certificate, not fully executed, was missing. Plaintiff is again met with its own failure to take care on its own behalf, for the duty rests upon it not to accept a forged paper. Failure to give notice did not constitute negligence making defendants liable. Mass. *v.* M., K. & T. Ry. Co., 83 N. Y. 223.

It is our opinion that the demurrer to the petition was properly sustained.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*

GUERRY, J., concurring specially. In order to give plaintiff a right of action in this case, it took three concurrent acts—first, that of the Coca-Cola Company in signing the stock certificate. This was done. Second, the transfer signature of the Trust Company of Georgia by its regularly constituted agent. This too was done, for it is alleged that Shropshire was so empowered to sign, and this is true even when the certificate was issued to Shropshire. All bona fide signatures necessary to a valid transfer were present thus far. A third signature was also necessary and a condition precedent to the valid transfer of the stock certificate to the plaintiff; that of the Atlanta and Lowry National Bank. This signature was forged by the agent of the Trust Company of Georgia, and the transferee claiming thereunder gains no title as against the true owner.