THOMAS N. DAVEY, Defendant in Error, v. NEWELL-MORSE ROYALTY COMPANY, Plaintiff in Error.

Springfield Court of Appeals, March 3, 1913.

1. **CORPORATIONS: Pledge of Spurious Corporate Stock: Position of Pledgee.** A bona fide pledgee of stock for a present consideration occupies the same position as a purchaser thereof and when he gives value on the faith of a certificate of stock, authenticated by the seal of the corporation and the signatures of the proper officers, he acquires an equitable title thereto and may require the corporation to transfer the stock to him or respond in damages for the default.

2. ————: **False Certificate of Stock: Corporation's Liability for Issuance and Pledge of.** The secretary of the defendant corporation made out and filled in with his own name, in excess of the capital stock of the corporation, a certificate of stock for 250 shares, attached the seal of the corporation thereto and affixed his own name as secretary, detached the certificate from the stock book and took it to New York where the president of the corporation signed it in his official capacity, no examination of the stock book of the corporation or its records being made, and without inquiring why said stock was being issued, whether for stock that had been returned canceled or for transfer of stock. The certificate of stock thus signed was returned to the secretary. The greater majority of the shares of the stock in the defendant corporation was originally issued to and held by the secretary thereof. At the time the certificate in question

was presented to the president for his signature, the president knew, or supposed, that these particular shares, along with others, were in a pool. The president signed the certificate on the bare representation of the secretary that the stock had been withdrawn from the pool, or permission therefor had been obtained, which was not true. The certificate in question was numbered 194 and was spurious, the genuine certificates being numbered consecutively from 1 to 120 inclusive. The secretary of the defendant company borrowed $3000 from the plaintiff, giving as collateral security the spurious certificates of stock. *Held*, that plaintiff had a right to presume that the certificates were genuine and that he was justified in relying on the president's signature and the seal of the corporation as a proof of such genuineness, and the defendant corporation is held liable to the plaintiff in the amount of the loan.

Error to Jasper Circuit Court, Division Number Two. —*Hon. D. E. Blair*, Judge.

AFFIRMED.

*Roy Hockensmith, Norman A. Cox*, and *Hugh Dabbs* for defendant in error.

(1) A corporation is liable in damage to a bona fide purchaser or pledgee of an over-issue or fictitious certificates of stock, if they were issued by an officer or agent under authority from the corporation or its managing officers, or by an officer or agent clothed with apparent authority, although his act may have been in fact unauthorized and fraudulent; or if their issue and the consequent injury were the result of negligence on the part of the corporation or its managing officers. Railroad v. Bank, 56 Ohio St. 351, 43 L. R. A. 783; Tome v. Railroad, 36 Md. 36, 17 Am. Rep. 540; Railroad v. Bank, 60 Md. 36; Havens v. Bank, 133 N. C. 214, 95 Am. St. Rep. 627; Titus v. Turnpike Road, 61 N. Y. 237; Railroad v. Schuyler, 34 N. Y. 30; Allen v. Railroad, 150 Mass. 200, 15 Am. St. Rep. 186; Jarvis v. Beach Co., 148 N. Y. 652, 31 L. R. A. 778; Bank v. Railroad, 137 N. Y. 231, 19 L. R. A. 335; Land Co. v. Parker, 87 Am. St. Rep.

(Wis.) 845; Land Co. v. Hildebrandt, 79 N. W. (Wis.) 753; Watson v. Printing Co., 56 Mo. App. 153; Thompson on Corporations, secs. 1500-1501; Colbrook on Collateral Securities, sec. 314; Clark & Marshall on Corporations, secs. 428 to 433 inclusive; Cook on Corporations, (6 Ed.), sec. 293; Purdy's Beach on Corporations (last Ed.), secs. 279-280.    (2) Purchasers, or parties receiving stock as security for a loan, are not bound to look beyond the certificate itself, nor to examine the books of the corporation to ascertain whether the stock has been issued according to law.    This is the duty of the corporation and its officers.    Railroad v. Bank, 43 L. R. A. 784; Titus v. Turnpike Co., 61 N. Y. 243; Jarvis v. Beach Co., 31 L. R. A. 778; Allen v. Railroad, 15 Am. St. 191; Trust Co. v. Glass Co., 213 Pa. St. 307, 5 Am. and Eng. Ann. Cas. 250; Morawitz on Corporations, sec. 185; Land Co. v. Parker, 87 Am. St. 845; Trust Co. v. Lumber Co., 118 Mo. 454; Havens v. Bank, 95 Am. St. 637, also authorities under point 1.    (3) The liability of the corporation for the issue of stock in excess of its authorized capital stock is the same whether the issue is made unlawful by the common law, the statute of the State or prohibited by the Constitution.    Thompson on Corporations, secs. 1490-1493; Purdy's Beach on Private Corporations (last Ed.), sec. 283; Railroad v. Schuyler, 34 N. Y. (App.) 50; Land Co. v. Parker, 87 Am. St. 845; Allen v. Railroad, 15 Am. St. 185; Cook on Corporations (6 Ed.), secs. 292-3; see also authorities cited under point 1.    (4) A certificate of stock in a corporation is a continuing affirmation by the corporation, that the person to whom issued is the owner of the shares therein named.    It partakes to a great extent of the qualities of a negotiable security and may be transferred by delivery and indorsement, authorizing the person to whom transferred to have the transfer made on the books of the company.    Keller v. Machine Co., 43 Mo. App. 87; Trust & Savings Co. v.

Lumber Co., 118 Mo. 458; Havens v. Bank, 95 Am. St. 635; Bank v. Lanier, 11 Wall. (U. S.) 369; Dain Mfg. Co. v. Seed Co., 95 Mo. App. 144; O'Brien v. Cummings, 13 Mo. App. 199. (5) In the absence of evidence of the actual value of the stock, where the entire capital stock is paid up, the law presumes its market value to be its par value. Trust & Savings Co. v. Lumber Co., 118 Mo. 461; Hewitt v. Steele, 118 Mo. 474.

*Thomas & Hackney* for plaintiff in error.

(1) The court erred in overruling the defendant's declaration of law No. 1, in the nature of a demurrer to the evidence. Under the pleadings and evidence the defendant was not liable for the fraud of Newell in illegally issuing to himself the spurious certificate of stock. This stock had never been thrown on the market. Plaintiff admitted that the certificate was taken out of the book and delivered to him in the company's office at the time the loan was made. The plaintiff was not dealing with the defendant corporation. He was dealing with Newell in his individual capacity. He relied on Newell's individual representations. He placed confidence in Newell. He was deceived and defrauded by Newell. The certificate was entirely in the handwriting of Newell except the signature of president, and the certificate being newly issued and so long after the organization of the corporation the plaintiff must have known at the time of making the loan that Newell could acquire the stock only by a transfer on the books. These facts bring the case squarely within the rule of the following authorities which hold that the corporation is not liable for damages. Farrington v. Railroad, 150 Mass. 406, 5 L. R. A. 849; Moores v. Bank, 111 U. S. 156; 1 Cook on Corp. (6 Ed.), p. 805 (4 Ed.), p. 571; 10 Cyc., p. 445; 2 Thomp. on Corp., sec. 1499; Whitfield v. Copper Co., 123 Pac. (Wash.)

1078-1080; Lee v. Smith, 84 Mo. 304; Bank v. Edwards, 243 Mo. 553, 147 S. W. 978. (2) One who accepts newly issued certificates of stock from an officer of a corporation, who has authority from the corporation to sign and seal and issue for the corporation certificates of its stock, as collateral security for a personal loan made to the officer is bound to inquire whether the officer had authority to issue certificates for the purpose intended, but if he does not make such inquiry and the officer in fact issues them in fraud on the rights of the corporation, he takes them subject to those rights. 2 Thompson on Corp., sec. 2606; cases cited under point 1. (3) The court erred in refusing declarations of law Nos. 2, 3 and 4 asked by defendant. Under Sec. 8, Art. 2 of the Constitution of the State of Missouri, the certificate was absolutely null and void, having been issued in excess of the authorized capital stock of the defendant company, and Newell not having power under the Constitution to issue said certificate did not have the power to put the same in circulation, and any frauds committed by him, or any representations made by him with respect to the stock, were not binding on the defendant. (4) The court erred in refusing declarations of law numbered 6, 7, 8, 9 and 10 asked by the defendant. These declarations of law were all predicated on the fact that the plaintiff made the loan to Newell knowing the same to be for his private use and on his private account, and not for the benefit nor on behalf of the defendant company; and the plaintiff, in thus dealing with Newell individually was required to make reasonable investigation and inquiry as to whether or not the certificate issued in Newell's name was valid. See authorities cited under point 1.

ROBERTSON, P. J.—Plaintiff recovered judgment against the defendant for the sum of $3445, and it is alleged in his petition in substance that the defendant was incorporated under the laws of the State

of Missouri, June 22, 1905; that its principal business office was at Carthage, Missouri; that one S. F. B. Morse was the president of defendant company from that date until February 17, 1910; that J. P. Newell was during all that time its secretary and H. W. Blair its vice-president; that the capital stock of said corporation authorized by law and its articles of incorporation was $250,000, divided into 2500 shares of the par value of $100 each, and that the full amount thereof was actually subscribed and issued at the time of the incorporation; that Newell was one of the stockholders therein and had a majority of stock issued in his own name, attested by the seal of the corporation and signed by the president; that Newell was negligently and carelessly permitted by the board of directors of the corporation and the president and vice president thereof, without supervision, investigation or direction on the part of the board of directors, or its officers, to have full charge of the business of said corporation and the issuing of its certificates of stock; that the capital stock of said corporation had never been increased; that the officers and board of directors of the corporation negligently and carelessly failed to keep books and records and record therein the amount of the capital stock subscribed, the names of the owners and the amount held by them respectively, the amount of money paid and by whom paid, the transfer of said stock and to whom transferred, the amount of its assets and liabilities, and the names and places of residence of its officers, the only record of the corporation being the stub and stock book in which the stock was bound; that the officers and directors failed to investigate and examine the acts and official conduct of its secretary in the management of its business, and failed to examine the record of the issuance, transfer, return and cancellation of its stock, and negligently and carelessly permitted the said secretary to have complete charge of the management of the busi-

ness of said corporation as aforesaid, without any examination thereof on the part of the board of directors and the officers, and negligently and carelessly permitted the secretary from time to time to take the stock book of said corporation, in which the blank certificates of stock were bound with the seal thereto attached, to the State of New York for the president to sign up the certificates of stock ahead of the transfer thereof and in anticipation of such transfer and in blank; and negligently and carelessly permitted the said secretary to deal, act and control the same after being so signed and issued at his discretion; that the board of directors permitted the secretary to fill out in his own name certificates of stock in excess of the capital stock of said corporation and attach the seal thereto, and carry the same to the State of New York in the absence of the vice president of said corporation to be signed by the president, who negligently and carelessly for said corporation attached his name thereto as president, with the seal of said corporation attached, without any examination of the books of said corporation or inquiry as to why said stock was being issued, or whether the same was being issued for stock that had been returned and cancelled or for transfer of stock, and negligently and carelessly, after so signing the same, delivered said stock to the said secretary; that the board of directors negligently and carelessly permitted and allowed said secretary to fill out at his own discretion, without supervision or investigation on the part of said corporation or its said officers, certificates of stock in excess of the authorized capital stock of said corporation in his own name and attach the seal of the corporation thereto signed by him as secretary, and took and presented the same to the vice president, who on behalf of and for said corporation, negligently and carelessly as such officer, signed the same at the request of said Newell, without any examination of the stock book of said corporation,

and on an examination it was shown that such issue of stock was in excess of the capital stock of said corporation; that on the 23d day of January, 1909, the said secretary falsely and fraudulently made out and filled in with his own name, in excess of the capital stock of said corporation, a certificate of stock for 250 shares, attached the seal of said corporation thereto and affixed his own name as secretary, detaching same from the stock book, and took it to New York where the president negligently and carelessly signed the same as president of said corporation without any examination of the stock book or records of said corporation or any inquiry why said stock was being issued, or whether for stock that had been returned cancelled or for transfer of stock, and delivered said certificate of stock to said secretary so signed.    The certificate is as follows:

Incorporated under the law of the

State of Missouri.

No. 194                                         Shares 250

Newell-Morse Royalty Company

Carthage, Missiouri.

Capital Stock $250,000.00

Fully paid and Non-assessable. .

THIS CERTIFIES that J. P. Newell is the owner of Two Hundred and Fifty Shares of the Capital Stock of

Newell-Morse Royalty Company

transferable only on the books of the corporation by the holder hereof in person or by attorney upon surrender of this certificate properly indorsed.

IN WITNESS WHEREOF, the said corporation has caused this certificate to be signed by its duly authorized officers and to be sealed with the seal of the corporation.

At Carthage, Mo., this 23rd day of Jany., A. D. 1909.

J. P. Newell,                           S. F. B. Morse,
   Secretary.  .                         President.
(Newell-Morse Royalty Company
           Seal
       Carthage, Mo.)
          Shares $100.00 each.

Indorsed on back as follows:

Certificate
for
250
Shares
of the
Capital Stock
Newell-Morse Royalty Company
Issued to
J. P Newell
dated
Jany. 23, 1909.

and with the following indorsements thereon, to-wit:

For value received ........ hereby sell, assign and transfer unto ................. shares of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint ........ to transfer the said stock on the books of the within named corporation with full power of substitution in the premises.

     Dated ....................190 ........
     In the presence of ....................
                        J. P. Newell.

And the plaintiff further alleged that by reason of the negligent and careless acts and conduct of said corporation, its directors and officers, and the fraudulent conduct of Newell in issuing said false and fraudulent certificate of stock in excess of its authorized capital stock, it did falsely represent and state under

the seal of said corporation, attested by its president and secretary, that the said J. P. Newell was the owner of 250 shares of the capital stock of said corporation as evidenced and represented by said certificate of stock, and that the same was fully paid and nonassessable; that on the 4th of March, 1909, the said Newell applied to the plaintiff for a loan of $3000 and as an inducement to said plaintiff to make said loan and as security therefor, offered to and did pledge to plaintiff the said certificate of stock, and that the plaintiff relying upon the representations contained in said certificate of stock, and believing the same to be genuine, and having no knowledge of the fraudulent and fictitious issue thereof, believing that Newell was the owner thereof, did on said day loan to said Newell $3000, taking his note therefor, due ten days after date with interest at eight per cent per annum, and accepting said stock as a pledge and security therefor; and that in December, 1909, the plaintiff ascertained that said certificate of stock was issued for shares in excess of the capital stock of said corporation, and thereupon he demanded from the defendant, through its officers and agents, that they deliver and transfer to him a valid certificate of stock for 250 shares in lieu of said fraudulently issued stock, or to pay to him the said $3000 with interest; and that said Newell at the time of issuing said stock and the delivery thereof to the plaintiff, and at the time of the commencement of said suit, was insolvent.

To plaintiff's petition defendant answered substantially that the certificate of stock was spurious and was never issued by authority of the defendant, and that if Newell put the same in circulation it was done by him in his individual capacity for his sole personal benefit and not in the line of his duty as an officer of defendant; that long prior to the issuance of this certificate the full amount of the capital stock had been duly issued and that no officer or agent of the defend-

ant had any power or authority to issue or put in circulation other or additional certificates of stock, that the certificate was issued by said Newell without the consent of the persons holding the larger amount in value of the stock of defendant and without there having been paid to the defendant any money therefor or labor done or property received therefor by this defendant, and that it was put in circulation in violation of section 8, article 12, of the Constitution of the State of Missouri, and that the defendant did not at any time sanction or ratify the issuance or putting in circulation of said document by said Newell; that the certificate of stock was surreptitiously and wrongfully extracted by the said Newell from the back of the stock book of the defendant, and said certificate showed on its face that it was not a genuine certificate of stock issued by the defendant for the reason that at the time of the issuance of the same the genuine certificates of stock issued by the defendant amounted in numbers to 120 and were numbered from 1 to 120, both numbers inclusive, whereas the number of the certificate in controversy was 194; that the books of the defendant company being kept in its office in Carthage, Missouri, clearly showed the names and amounts of the holdings, together with the number of each of the several certificates of stock of all of the stockholders of the defendant, and that these books were of easy access to the plaintiff, the plaintiff could have readily examined them; that an examination thereof would have disclosed the fact that the certificate offered to plaintiff as security for the loan was spurious and was issued without authority; that the plaintiff knew, or could have known by the exercise of ordinary diligence, that the certificate was not genuine; that the plaintiff failed to exercise ordinary care for his own protection and negligently relied upon the false statements of said Newell made in his individual capacity and for his own private benefit and gain, which was

known, or by the exercise of ordinary care, could have been known, by the plaintiff; that the plaintiff knew at the time he made this loan that Newell was insolvent and sorely pressed for funds, of which fact the defendant was ignorant; that plaintiff had knowledge that any representations made by Newell were representations of his own interest and could not safely be relied upon by the plaintiff; that the conduct of Newell was such as to put a prudent person on inquiry and that the plaintiff had known the said Newell more intimately and for a longer time than any of the stockholders, officers or agents of the defendant had known him, and that the plaintiff knew that he could not rely with safety upon the representations made by Newell wherein he undertook to represent himself as the owner and holder of stock to the amount and value indicated by said certificate.

To this answer the plaintiff replied by a general denial.

A jury was waived and the cause tried before the court. No declarations of law were requested or given in behalf of the plaintiff but the defendant requested declarations of law, presenting its theory of the case as contained in its answer, all of which were refused, and judgment rendered in favor of plaintiff for $3130. Defendant filed its motion for new trial and in arrest of judgment in due time, which being overruled, it obtained leave to file its bill of exceptions, and afterwards sued out in the Supreme Court a writ of error, upon the evident theory that the allegations in its answer as to the violation of section 8, article 12, of the Constitution of Missouri conferred jurisdiction upon that court. The plaintiff, as defendant in error, filed in that court a motion to transfer the cause to this court. The Supreme Court sustained plaintiff's motion and the cause is here for determination.

The undisputed testimony discloses that defendant was incorporated as alleged in the plaintiff's peti-

tion and that in the Articles of Incorporation J. P. Newell was designated as the owner of 850 shares of the capital stock of the corporation in his own individual capacity and as trustee of 1500 shares. The testimony shows that the stock issued to Newell as trustee was in trust for S. F. B. Morse, who was, within a few days after the incorporation, elected president and continued as such officer as alleged in the plaintiff's petition. By-laws were adopted by the stockholders which provided that the annual stockholders' meeting should be held at the office of the company in Carthage at the hour of ten o'clock a. m. on the second Monday in January of each year; that regular meetings of the board of directors should be held immediately following the adjournment of the stockholders annual meeting, and on the first Tuesday of each month thereafter at eight o'clock p. m., and that special meetings should be held at any time on the call of the president or any two directors filed with the secretary. The by-laws also provided that shares of stock should be transferable only on the books of the corporation either by the holder in person or by lawful attorney duly authorized in writing, and that the directors should elect or appoint all of the officers of the corporation and prescribe their duties, and should have power to suspend or dismiss any officer, agent or employee of the corporation, whether elected or appointed by the board of directors, or otherwise, at any time, and that the regular officers should be president, vice-president, secretary and treasurer, who should perform the usual duties pertaining to their respective offices, and such further duties as might be prescribed by the board of directors from time to time, and should hold office during the pleasure of the board of directors.

It appears that the capital stock of the corporation was paid by the transfer of 160 acres of mining

169 Mo. App.—37

land near Webb City by Newell and that from the inception of the organization of the corporation, Newell and Morse owned and controlled practically all of the stock of the corporation. Blair, the vice president, testified that he owned one share of stock, and while he and the other resident stockholders designated in the articles of incorporation are represented there as owning fifty shares each, it is disclosed by the evidence that they were only stockholders for the purpose of having the requisite number of resident directors.

The office of the company was in the office of Newell at Carthage. All of the bona fide certificates of stock were signed by the president, Morse, at Carthage. There were no stock books kept as required by law. There were never any inquiries made by the president in signing certificates of stock presented to him by Newell; neither did the officers or any of the board of directors examine the books of the corporation to ascertain in regard to the issuance of stock prior to the date plaintiff made his loan to Newell, and the directors met only once a year.

It will be observed in reference to the certificate of stock in controversy that it was issued January 23, 1909, and the loan to plaintiff made March 4, 1909. Newell filled out the certificate of stock, placed the seal thereon, tore it out of the stock certificate book and took it to New York, where he obtained the signature of the president thereto on or about the date the certificate bears.

After the incorporation of the defendant company, Newell and Morse interested a Mr. Tipton of New York City in the corporation and the sale of its stock, whereupon a stock syndicate or pool was formed by them and others in which Newell placed 255 shares of his stock. About the middle of the year 1908 Newell was endeavoring to make a loan on his stock in this syndicate and was endeavoring to obtain permission of Mr. Tipton, who was one of the trustees in that

Davey v. Royalty Co.

syndicate, to have the stock released. Newell's stock, however, was not released, but when Newell appeared in New York to have this particular certificate of stock signed by the president, he represented to Morse that there was a transfer of some stock that had to be made and he didn't think it was necessary to carry the books and the seal from Carthage to New York, and also stated that Blair, the vice president, was absent from Carthage, and asked the president to put his signature on the certificate so that he could send it back immediately for mailing or delivery. The president testified that he didn't sign any certificates in blank so that it is evident that the name of Newell was in the certificate when he signed it. At the time that Mr. Morse signed this certificate he knew that Newell's stock was in the syndicate, and knew that it could not be withdrawn without the consent of all of the parties in the pool, but he did not make any inquiries of any other person in the pool but relied implicitly upon all of the statements that Newell made as to the purpose for which this certificate was desired. He says that the corporation was a close corporation, owned by a few people, Newell, Tipton, himself and their friends, and that the stock was not being transferred actively, and that he had an intimate knowledge of all of the stockholders. After Morse signed this certifidate he advised Mr. Tipton of what had taken place and was severely criticised for not advising Tipton before signing the certificate, but even then no action was taken by either of them to investigate Newell's conduct with reference to this certificate.

At the time plaintiff made the loan to Newell he was in Newell's office and he testified that he saw Newell writing something on a stub of a stock book but there is nothing to indicate what he was writing and the plaintiff may well have surmised that he was making a notation of the pledge of this particular certificate of stock to thim.

There is no allegation in the plaintiff's petition that this note was unpaid, but at the trial he testified, without objection, that it was still due and unpaid, and no objection is made here on that point.

Upon these facts the defendant contends that the plaintiff should suffer the loss occasioned by Newell's misconduct and the negligence of the other officers and directors of the defendant corporation.

In Watson v. Printing Co., 56 Mo. App. 145, 153, it is held that a lender who "gives value on the faith of a certificate of stock, authenticated by the seal of the corporation and the signature of the proper officers, acquires an equitable title and may require the corporation to transfer the stock to him or respond in damages for the default."

There is an apparent conflict in the authorities cited by the plaintiff and defendant in support of their respective contentions, but the opinion in Cincinnati, N. O. & Tex. Ry. Co. v. Citizens' Natl. Bank, 56 Ohio, 351, 43 L. R. A. 777, cited and relied upon by the plaintiff, contains many instructive suggestions applicable to a case of this character. This is a well-considered opinion and reviews the authorities at length. In that case the certificate was fraudulently issued as in this case and it is there said that "the fact that the certificate appears on its face to have been issued to the secretary as the owner of it cannot be regarded as a suspicious circumstances where, as in this case, he was not forbidden to hold stock, and, as found, 650 valid shares had been issued to him."

It appears in the case now under consideration that the greater majority of the stock in the defendant corporation was originally issued to and held by Newell and at the time that the particular certificate in controversy was presented to the president of the defendant company to sign that the president then knew or supposed that the particular shares of stock were in the pool, and that he signed the certificate on the

bare representation of Newell that the stock had been withdrawn, or permission therefor had been obtained, when in fact it had not.

There are distinguishing features between the case at bar and many of the cases upon which the defendant company relies in support of its contention here. The case of Farrington v. South Boston R. R. Co., 150 Mass. 406, 5 L. R. A. 849, involves a certificate of stock newly issued in the name of the pledgee. In that opinion reference is made to a decision in which that court held "that the purchaser of stock owes no positive duty to the corporation to see to it that the seller surrenders the old certificate and makes assignment of the stock on the books of the company, but that it is the duty of the corporation which requires these things to be done to see that they are done before a new certificate is issued to the purchaser," and then resolved the case against the pledgee on the assumption that he was not in the attitude of a bona fide purchaser of stock for value. In Missouri a bona fide pledgee of stock for a present consideration stands in the same attitude as a purchaser so that the Farrington case argumentatively sustains the contentions of the plaintiff.

The defendant company also relies upon the case of Moores v. Citizens' Natl. Bank, 111 U. S. 156, 28 L. Ed. 385, but in that case the certificate of stock was issued directly to the pledgee and on a reference to the petition in that case (found in a prior report when the case was in the Supreme Court on a question of pleadings) it will be seen that the action was not based upon the ground of the alleged negligence of the defendant and its officers. Also, throughout that opinion the fact is emphasized repeatedly that the certificate was issued in the name of the pledgee and showed upon its face that no certificate could be lawfully issued without the surrender of a former certificate and that "the very form of the certificate was such as to put her

upon her guard.'' This distinction is commented on in an opinion by the Supreme Court of North Carolina in the case of Havens v. Bank, 95 Am. St. 635. The pledgee in the Moores case knew she had surrendered no certificate of stock to be transferred on the books of the company and in fact never owned any stock in the corporation that entitled her to a certificate to that effect; but in the present case the plaintiff had the statement of the president of the defendant corporation and the verity implied by the seal, as well as the official signature of Newell, to vouch for the fact that the requisite surrender and transfers had been made.

The defendant also relies upon the opinion in the case of St. Charles Sav. Bank v. Edwards, 243 Mo. 553, 147 S. W. 978, wherein it is held by the Supreme Court of this State that where a bank cashier drew checks on the bank's account which he deposited with his broker to the credit of a speculative account, the burden is on the broker, in an action by the bank to recover the proceeds of the checks, to prove that the cashier was either authorized to draw them or that the bank had received the full value thereof. There are features in that case which distinguish it from this case. There the broker was dealing directly with the cashier who was acting alone and without the concurrence or mediation of any other officer of the corporation, but in the present case the plaintiff not only had the signature and assurance of the secretary of the defendant corporation as to the genuineness of the certificate but he further had the evidence of the corporate seal of the corporation and the signature of the executive and presumably the managing officer of the corporation, not personally interested in the transaction with plaintiff, certifying that Newell was the owner of so many shares of the capital stock of the defendant corporation. Also, in the Edwards case the cashier did not have any funds in the bank with

which to pay the checks which he had drawn thereon for his private use to an individual who relied solely on these acts of the cashier, but in the case under consideration, Newell did have certificates of stock in the corporation which he had a right to sign and assign, and he presented to plaintiff a certificate verified as above stated. Hence, we do not think the burden of investigation should be imposed on plaintiff to the extent of holding that it was his duty to ascertain whether this certificate was legitimately issued or whether it was spurious.

The case of Lee v. Smith, 84 Mo. 304, cited by the defendant as an authority in its behalf, is distinguishable from the present case upon the same principles as is the Edwards case, supra.

The defendant alleges in its answer, as above stated, that its genuine certificates were numbered consecutively from 1 to 120 inclusive and that an examination of its books by the plaintiff would have disclose that the certificate pledged to him, numbered 194, was a fabrication, but this suggests a rebuke of the president of defendant corporation for culpable carelessness, under the suspicious circumstances surrounding his authentication of the certificate, in not examining the books, which should have been of ready access to him, and discovering this break in the continuity of the certificate numbers. Plaintiff in this case had the right to presume that the books showed what defendant alleges in its answer they contained, and he was further justified in relying on the president's signature and the seal of the corporation as a declaration that an examination thereof had been made by the president and no irregularity discovered.

The stockholders of the corporation selected their board of directors and the board of directors selected the officers. If the directors and officers had performed their duties no fraud would have been perpetrated by Newell upon this plaintiff, and if by reason

of their dereliction any one must suffer loss it would be unconscionable to place that burden upon the plaintiff who, in this case, was in no manner negligent. There being no suspicious circumstances connected with the presentation of this stock to plaintiff as collateral security for the loan sought which would put an ordinarily prudent man upon inquiry, we think the burden should remain where the trial court has placed it,—upon the defendant corporation.

We are, therefore, of the opinion that the judgment of the trial court should be affirmed, but upon condition that the plaintiff surrender to the defendant the certificate of stock held by him as collateral security for his loan, and if within thirty days from this date satisfactory evidence is produced to this court of such surrender the judgment will be affirmed. All concur.

## SUPPLEMENTAL OPINION.

PER CURIAM. The plaintiff having submitted to this court satisfactory evidence of the surrender and delivery of the certificate referred to in the above opinion, the judgment of the circuit court is unconditionally affirmed.