## CITIZENS' NAT. BANK OF LOS ANGELES v. SANTA RITA HOTEL CO.

Circuit Court of Appeals, Ninth Circuit.
November 14, 1927.

No. 5249.

1. **Appeal and error ⬤◌1048(1)—Any error in sustaining objection to question testing ability of witness to identify his signatures on stock certificates held cured by permitting him to answer.**

In action to establish validity of corporate stock certificates pledged to secure private loan to corporation's deceased secretary, any error in sustaining objection to cross-examination of corporation's president, who was asked to identify his signatures on a number of certificates, which were exhibited to him in such a manner as to conceal everything except the signatures, *held* cured by permitting him to answer.

2. **Evidence ⬤◌276—Decedent's declarations that stock certificates on which he borrowed money were spurious held admissible as admissions against interest.**

In action to establish validity of corporate stock certificates pledged to secure private loan to corporation's deceased secretary, declarations of decedent, made shortly before his death to officers of corporation, that the certificates involved and others on which he had borrowed money were spurious, and that the stock represented thereby was no good, *held* admissible as admissions against interest.

3. **Appeal and error ⬤◌1058(2)—Erroneous exclusion of decedent's admissions against interest held not prejudicial, in view of subsequent admission thereof.**

In action to establish validity of corporate stock certificates pledged to secure private loan to corporation's deceased secretary, error in excluding decedent's admissions against interest *held* not prejudicial, where testimony was subsequently admitted notwithstanding the ruling.

4. **Evidence ⬤◌265(2)—Deceased secretary's admission that he forged president's name to stock certificates pledged for personal loan held to warrant finding certificates were spurious.**

In action to establish validity of corporate stock certificates pledged to secure private loan to corporation's deceased secretary, decedent's admission that president's signatures to the certificates were forged by him and that certificates were spurious, made shortly before his death to officers of corporation, *held* to warrant finding that certificates were spurious.

5. **Corporations ⬤◌148—Corporation held not liable on forged stock certificate pledged to secure personal loan, in absence of inquiry as to genuineness of president's signature.**

Private corporation is not liable on certificates of stock issued in name of its secretary, to which secretary signed his own name and forged name of president to secure a private loan to himself, where lender made no inquiry, at least to the extent of ascertaining that president's signature was genuine.

Appeal from the District Court of the United States for the District of Arizona; William H. Sawtelle, Judge.

Suit by the Citizens' National Bank of Los Angeles against the Santa Rita Hotel Company. Decree for defendant, and plaintiff appeals. Affirmed.

Frank E. Curley and Samuel L. Pattee, both of Tucson, Ariz., for appellant.

S. L. Kingan and George R. Darnell, both of Tucson, Ariz., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

RUDKIN, Circuit Judge. Santa Rita Hotel Company is a corporation organized under the laws of the state of Arizona, and during the period covered by the transactions here involved one Huffman was its president and one Mets its secretary. On July 5, 1923, Mets borrowed from the Citizens' National Bank of Los Angeles the sum of $5,000, and pledged two certificates of stock, standing in his name, in the hotel company, as collateral security for the payment of the loan. The certificates, for 50 shares each, were signed by the secretary, with the corporate seal affixed, and purported to be signed by the president. November 5, 1923, the hotel company notified the bank that the two pledged certificates were not valid or genuine. The bank thereafter made demand that the hotel company, through its proper officers, transfer the certificates on its books, or execute and deliver to the bank other and genuine certificates representing capital stock in the hotel company in the same amount. This demand was refused and the present suit followed.

The relief sought was the transfer of the stock on the books of the hotel company, the issuance and delivery of other and genuine certificates in the same amount upon surrender of the old certificates, and an adjudication that the pledged certificates were valid, or, in the alternative, that the bank have a personal decree against the hotel company in the sum of $5,000, the amount of its loan,

with interest and costs. On final hearing the court found that the president's signature to the two certificates was forged, and entered a decree of dismissal. From that decree this appeal was prosecuted. The errors assigned relate to the admission and exclusion of testimony, to the sufficiency of the testimony to support the findings and to the sufficiency of the findings to support the decree.

[1] In the course of the trial the president of the appellee corporation testified that the two certificates· did not bear his signature. On cross-examination a number of certificates already in evidence, including the two in controversy, were exhibited to the witness in such manner as to conceal everything except the signatures, and he was asked whether the signatures were his. To this question an objection was interposed and sustained, but the witness was required or permitted to answer, notwithstanding the adverse ruling. The witness answered the question, stating that he could not identify the signatures standing alone, and would not undertake to do so. The question itself would seem a proper one to test the knowledge of the witness, and to ascertain whether his opinion was based solely upon an inspection of the signatures, or wholly or in part upon extrinsic facts, but the answer of the witness cured any error in that regard.

[2] Some of the officers of the appellee testified to conversations with Mets at different times, in which he informed them that he had borrowed money from certain parties on spurious stock; that he had taken blank certificates from the back of the stockbook and had filled them out in his own name; that such stock was no good, and that he would later furnish a list of all spurious stock so issued. Such a list was thereafter furnished, and the list included the 100 shares in controversy. Soon after these conversations, the secretary died. The conversations and the list furnished by the secretary were offered in evidence, but an objection thereto was sustained; but, as in the former case, the testimony was admitted, and appears in the record, notwithstanding the adverse ruling.

It is conceded by counsel for the appellant that declarations, oral or written, made by a deceased person as to facts presumably within his knowledge, if relevant to the matter of inquiry, are admissible in evidence as between third parties, when it appears that the declarant is dead; that the declaration was against his pecuniary interest; that the declaration was of a fact in relation to a matter of which he was personally cognizant, and that the declarant had no probable motive to falsify the fact declared. Halvorsen v. Moon & Kerr Lumber Co., 87 Minn. 18, 91 N. W. 28, 94 Am. St. Rep. 669. But they earnestly insist that the declaration in question was not against the pecuniary interest of the declarant. With this contention we are unable to agree. While it is true that a certificate of stock is only evidence of stock ownership, it is equally true that a deed is only evidence of title and a promissory note only evidence of an indebtedness, but it will scarcely be contended that a solemn admission by a party that a certificate of stock, deed, or promissory note under which he claims is a forgery, is not against his pecuniary interest.

[3] In some cases, he might perhaps be able to prove his title, or the indebtedness, without the stock certificate, deed, or note, but in many cases the admission would be entirely fatal to his claim. Furthermore, the admission in this case went beyond a mere admission that the certificates were forged. The deceased admitted in effect that there was no such stock as that represented by the two certificates outstanding, and that he was not in fact the owner of any such stock. Such an admission was clearly against his pecuniary and proprietary interest. The ruling sustaining the objection to the testimony was therefore erroneous, but, in view of the subsequent admission of the testimony notwithstanding the ruling, the error was without prejudice.

[4] The contention that the findings of the court are not supported by the testimony calls for but brief consideration. There was some expert testimony on either side tending to show that the signatures to the certificates were genuine, or the reverse, but the only person who had actual knowledge of the true character of the signatures was the deceased secretary, and his admissions, made under circumstances disclosing no conceivable motive to falsify the fact, is the most satisfactory evidence in the record.

[5] The principal contention of the appellant is that the appellee is liable, notwithstanding the signature of the president to the two certificates was forged by the secretary, to whom the loan was made. In this connection there is some discussion as to the authority theretofore exercised by the secretary in the matter of making sales of the corporate stock of the hotel company, and in other respects, but it is not claimed that in issuing certificates of stock his authority was other or greater than that of any other officer acting in a similar capacity, and inasmuch as in negotiating the loan the secretary was acting for himself and not for the corporation, his

general authority as agent for the corporation would not seem to be material.

The briefs of the parties cover a wide range, and cite many cases having little or no application to the precise question now under consideration. That question is: May the secretary of a private corporation forge the name of the president to certificates of stock, and bind the corporation by a pledge of the forged certificates to secure a private loan to himself?

The appellant relies chiefly on cases from New York, Ohio, Pennsylvania, Maryland, Missouri, North Carolina, and California. Perhaps the leading case from New York is Fifth Ave. Bank v. Forty-Second St. & G. St. Ferry R. Co., 137 N. Y. 231, 33 N. E. 378, 19 L. R. A. 331, 33 Am. St. Rep. 712, in which the corporation was held liable. In that case the secretary, who was also the treasurer and transfer agent of the corporation, forged the name of the president to a certificate of stock which was pledged to a bank to secure a loan, but the case differs from the present one in two important respects: First, before accepting the certificate as security, in the case cited, the president of the bank sent its confidential clerk to the office of the company to ascertain if the certificate was genuine, and the clerk was informed by the secretary and treasurer in charge of the office that it was; and, in the second place, the certificate was not issued in the name of the secretary but in the name of his partner in business. The partner was a stranger to the officers of the bank, and they had no knowledge of his business relations with the secretary.

The principal case from Ohio is Cincinnati, N. O. & T. P. Ry. Co. v. Citizens' Nat. Bank, 56 Ohio St. 351, 47 N. E. 249, 43 L. R. A. 777. In that case the certificates bore the genuine signatures of both the president and the secretary, and in reference to such a case the court said:

"In the absence of any knowledge of fraud in its issue, we know of no rule of diligence that requires one in purchasing such stock to inquire beyond the genuineness of the certificate on its face. If the signatures of the president and the secretary are genuine, and the seal has been affixed, and the paper on its face is a certificate of stock, to require one without knowledge of any fraud in its issue, before purchasing it, to inquire of the company or any of its officers as to whether it is genuine would be to require a degree of care not exacted in any other similar business transaction, and not observed by the most careful business men in dealing in the stock of a company."

It will thus be seen that the court was not there concerned with forged certificates. The same may be said of the decisions in Davey v. Newell-Morse Royalty Co., 169 Mo. App. 565, 154 S. W. 147, and National Bank of Webb City v. Newell-Morse Royalty Co., 259 Mo. 637, 168 S. W. 699, from the courts of Missouri, of the decision of the Supreme Court of North Carolina in Havens v. Bank of Tarboro, 132 N. C. 214, 43 S. E. 639, 95 Am. St. Rep. 627, and of the decision of the Supreme Court of California in Green v. Caribou Oil Min. Co., 179 Cal. 787, 178 P. 950.

In Tome v. Parkersburg Branch R. R. Co., 39 Md. 36, 17 Am. Rep. 540, it was made the duty of the treasurer of a railroad company to affix the seal of the company to all certificates of ownership of stock issued by the company and signed by the president. The treasurer, desiring to obtain money for his own use, fraudulently issued from the office of the company sundry certificates of stock, signed by himself, sealed with the corporate seal of the company, and purporting to be genuine in every respect. Upon the stock so issued, the treasurer, through the agency of a broker, borrowed large sums of money, the lender not knowing for whom the money was wanted, and advancing the same solely upon the faith of the certificates, which he believed to be genuine. Two of the certificates were issued directly to the lender, and the third was issued to the broker, and by him assigned to the lender. The signature of the president to the certificates of stock was in fact forged, but notwithstanding this the court held that the corporation was liable. As to the two certificates issued directly to the lender, at least, the case would seem to be directly in conflict with the decision of the Supreme Court in Moores v. Citizens' Nat. Bank of Piqua, 111 U. S. 156, 4 S. Ct. 345, 28 L. Ed. 385, hereafter referred to. The later Maryland cases follow this decision.

In Greensburg Title & Trust Co. v. Aspinwall-Delafield Co., 266 Pa. 160, 109 A. 631, the Supreme Court of Pennsylvania held that the plaintiff, who loaned money on the faith of stock certificates issued by a corporation, was not put upon inquiry as to the validity of the certificates by the mere fact that they stood in the name of the borrower who was likewise secretary of the company, there being no provision in the by-laws prohibiting the secretary from holding stock. In that case the signature of the president to the certificates was in fact forged.

In a note to Fifth Ave. Bank v. Forty-Second St. & G. St. Ferry R. Co., supra, in

19 L. R. A. 332, it is said that the decisions from New York and Ohio on this question are conflicting, and in Moores v. Citizens' Nat. Bank of Piqua, supra, the court said: "The American cases on which the plaintiff principally relies are decisions in the courts of Connecticut, New York, Pennsylvania, and Maryland, the soundness of some of which we are not prepared to affirm, but all of which are distinguishable from the case at bar."

The Moores Case is perhaps the leading one on this general subject, and is cited in nearly all of the subsequent cases, though not always to the same effect. In that case the cashier of a bank borrowed money for his private use and agreed with the lender to secure the loan by a pledge of stock in the bank of which he was cashier. Pursuant to this agreement, the cashier delivered to the lender a certificate of stock, in proper form, running in the name of the lender. As a matter of fact the cashier had not surrendered a certificate to the bank in lieu of the new certificate, and had made no transfer on the books of the bank, and in holding that the bank was not liable to the holder of the certificate the court said:

"The certificate which he delivered to the plaintiff was not in his name, but in hers, stating that she was entitled to so much stock, and showed, upon its face, that no certificate could be lawfully issued without the surrender of a former certificate and a transfer thereof upon the books of the bank. The by-laws passed under the authority expressly conferred by the act of Congress under which the bank was organized, contained a corresponding provision, designed for the security of the bank as well as of persons taking legal transfers of stock without notice of any prior equitable title therein. * * * The very form of the certificate was such as to put her upon her guard. She was not applying to the bank to take stock, as an original subscriber or otherwise; but she was bargaining with Robert B. Moores for stock which she supposed him to hold as his own. She knew that she had not held or surrendered any certificate, and she never asked to see his certificate or a transfer thereof to her; and he in fact made no surrender to the bank or transfer on its books. She relied on his personal representation, as the party with whom she was dealing, that he had such stock; and she trusted him as her agent to see the proper transfer thereof made on the books of the bank. Having distinct notice that the surrender and transfer of a former certificate were prerequisites to the lawful issue of a new one, and having accepted a certificate that she owned stock, without taking any steps to assure herself that the legal prerequisites to the validity of her certificate, which were to be fulfilled by the former owner and not by the bank, had been complied with, she does not, as against the bank, stand in the position of one who receives a certificate of stock from the proper officers without notice of any facts impairing its validity."

It will be conceded that the case has only an indirect bearing on the facts now before the court. The court held explicitly, however, that the lender could not rely on the certificate alone, but was bound to make inquiry back of the certificate to ascertain whether the issuance of the certificate was authorized by law. The same conclusion was reached in Farrington v. South Boston R. Co., 150 Mass. 406, 23 N. E. 109, 5 L. R. A. 849, 15 Am. St. Rep. 222, on the same facts, but for different reasons. The court there said:

"The plaintiff in the case at the bar was not a purchaser of stock, and he knew that he was dealing with the treasurer of the defendant in his personal capacity, as a borrower of money. If the by-laws of the company had provided that certificates of stock should be signed only by the treasurer, and if he were charged with the duty of attending to the transfer of stock and the issuing of certificates, any person lending money to him for his private use, and taking in his own name a certificate of the company's stock as collateral security, would reasonably be required to investigate the title of the treasurer to the certificate delivered, because in issuing such a certificate the treasurer would have a personal interest adverse to that of the corporation. An agent cannot properly act for his principal and himself when their interests are adverse, and any person dealing with an agent in a matter affecting his principal, and knowing that the interests of the agent are adverse to those of his principal, ought to be held to the duty of ascertaining that the acts of the agent are authorized by his principal. The difficulty in the present case is that these considerations are only partially applicable to it. It is on account of the danger that one officer may abuse his power to issue stock certificates that the by-laws of corporations usually require the certificates to be signed by at least two officers of the corporation. If one of these neglects his duty, or delegates the performance of it to the other, the safeguard intended by this requirement of the by-laws becomes ineffectual; and if one of these officers, in issuing a stock certificate, has a

personal interest adverse to that of the corporation, a person dealing with him, and knowing this, may well be required to take notice that the rights of the corporation are not protected in the transaction to the full extent intended by the by-laws."

In Williams v. Terminal Hotel Co., 115 Tex. 278, 280 S. W. 505, the court said:

"Before a stock certificate is valid, it is usually provided that it must be signed by two officers. One is a check against the other. Where one of them is acting in a double capacity, it does not seem to us to be right to permit a purchaser of stock to relieve himself of the duty of obeying the by-laws upon the mere presumption that this double capacity officer would look after the interests of the company in preference to his own. * * * We think the courts should assist the holders of the genuine stock to protect the value of their property, by requiring those buying the personal stock of those issuing the new stock to see that they are acquiring a good title thereto and that the by-laws of the corporation have been complied with."

In Dreyfus Min. Co. v. Willard, 46 Wash. 345, 89 P. 935, the facts were identical with the facts in the case at bar, and in holding that there was no liability on the part of the corporation the court said:

"It is a general rule that a principal is bound by the word or act of his agent spoken or done within the apparent scope of his authority; but to this rule there is a well recognized exception. It is in those cases where the statement or act of the agent, although within the apparent scope of his authority, is made for his own personal benefit in a transaction between a third party and himself personally, and from which no benefit flows to the principal. Under such circumstances those who knowingly deal with the agent, not as such but in his personal capacity, are not justified in relying upon his self-serving representations and acts, even though they would be within the apparent scope of his authority, if made or done in a transaction wherein he was not known to be the interested party. In other words, where one deals with an agent concerning a matter affecting his personal interest, he is not justified in relying upon the agent's statements and actions as being those of the principal, but must inquire of the principal himself or of some disinterested agent having power to speak for him. The reason of the rule is that the interests of the principal and agent in such a transaction are not one and the same, but are capable of being, and usual-

ly are, adverse; and under such circumstances public policy forbids that the temptation to betray the principal should be encouraged by permitting the agent's wrongful acts to work a fraud upon the principal. One dealing with the agent in such a situation without making further inquiry does so at his peril."

Without a further review of the authorities, we need only add that the court is bound to adopt a rule under which the secretary of a private corporation may wreck the corporation by forging the name of the president to certificates of stock issued by the secretary in his own name and pledged by him to secure his private indebtedness, or it must hold that the lender in such a case is in duty bound to make inquiry at least to the extent of ascertaining that the signature of the president to the certificate is genuine. As between these two rules, we have little hesitation in declaring that public policy and private honesty will be best promoted by the adoption of the second alternative.

The decree of the court below is therefore affirmed.