HORACE FARRINGTON *vs.* SOUTH BOSTON RAILROAD
COMPANY.

Suffolk.    January 15, 1889. — January 2, 1890.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN,
& KNOWLTON, JJ.

*Corporation — Issue of Shares of Stock — Fraud of Treasurer — Notice*
*— Due Care.*

If an officer of a corporation, having the power, either alone or with others, to issue certificates of stock, fraudulently issues as security for his private debt a certificate to his creditor in the latter's name, such creditor cannot rely upon the certificate, and recover damages from the corporation upon its refusal to recognize it as valid, although he has no knowledge of the fraud; but if upon taking it he fails to investigate the title to the stock, he is affected with notice of whatever he might have discovered upon making proper inquiry.

The president of a corporation signed and left with the treasurer blank certificates of its capital stock, all of which had previously been issued. The stock was transferable, as stated in each certificate, only by assignment on its books upon the surrender of outstanding certificates. The treasurer fraudulently signed and filled up in the usual form one of the certificates, affixing the corporate seal thereto, in the name of a creditor of his for borrowed money, and gave it to him as security for his debt. The treasurer owned no stock, and exhibited no other certificate thereof to the creditor, and made no transfer or entry of the transaction in any form on the books of the corporation, of which he had the custody. The creditor subsequently assigned this certificate, as security for a loan from a bank, to its cashier, who surrendered it and received a new one in his own name from the treasurer. Upon payment of the loan the cashier assigned the new certificate to the creditor, who, having lent a further sum to the treasurer, agreed that the certificate should be security for the entire debt. The corporation afterwards discovered this and other frauds of the treasurer, and upon a demand from the creditor, and upon his presenting the certificate, refused to issue to him a new certificate. *Held,* in an action against the corporation to recover damages caused by such refusal, that the creditor did not exercise due care in taking the certificate, and could not maintain the action.

ACTION, alleged in the writ to be in contract or tort, to recover damages caused by the refusal of the defendant corporation to recognize as valid certain shares of stock held by the plaintiff, or to allow them to be transferred, and to issue new certificates therefor.

The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, on agreed facts, which appear in the opinion.

The case was argued at the bar in January, 1889, and afterwards was submitted on the briefs to all the judges except *Holmes,* J.

*O. B. Mowry,* for the plaintiff.

*J. G. Abbott,* (*C. T. Gallagher & J. S. Dean* with him,) for the defendant.

FIELD, J. The plaintiff, in December, 1882, lent money to William Reed, and received from him as security for the payment of the loan a certificate in the name of the plaintiff of thirty-two shares of the capital stock of the defendant corporation, in the usual form, signed by its president and by its treasurer, with its seal affixed. This was a fraudulent overissue of stock by Reed, who was the treasurer, and who filled up a blank certificate which had been signed by the president and left with him. Reed owned no stock, and exhibited no certificate of stock to the plaintiff except that filled up with the plaintiff's name, and he made no transfer of stock on the books of the company; and there was no entry of the transaction in any form upon its books. The stock of the company was transferable by assignment on the books of the company, upon a surrender of the old certificate, and this was stated in the certificate delivered to the plaintiff. The plaintiff, in May, 1886, assigned this certificate to one Wilkins, the cashier of the Howard National Bank, as security for the payment of a loan of money made to the plaintiff by the bank. Wilkins surrendered this certificate and took a new one in his own name, which was issued to him by Reed, who, as treasurer, had the custody of the certificate and transfer books of the company. The plaintiff, in January, 1887, paid his debt to the Howard National Bank, and Wilkins assigned the certificate he held to the plaintiff. The plaintiff, in July, 1887, presented this certificate to the defendant and demanded a new certificate, which the defendant refused to give, having discovered, in November, 1886, this and other frauds of Reed. The original loan of the plaintiff to Reed was two thousand dollars; but in October, 1886, the plaintiff lent him one thousand dollars more, and it was agreed between them that the certificate of stock should stand as security for the payment of both loans. The amount due from Reed to the plaintiff at the date of the writ was $3,175.84.

It is manifest that the assignment of this certificate by the plaintiff to Wilkins as security for the payment of the plaintiff's debt to the bank, and the assignment back to the plaintiff when his debt was paid, did not put the plaintiff in any better position than he would have been in if the certificate had never passed out of his hands. The plaintiff had pledged property which had been pledged to him, and had redeemed it from the pledge he had made, and he held it by his original title as pledgee of Reed. *Simm* v. *Anglo-American Telegraph Co.* 5 Q. B. D. 188.

The present case cannot be distinguished in principle from *Moores* v. *Citizens' National Bank*, 111 U. S. 156. In that case Mr. Justice Bradley dissented, and the decision has been the subject of some criticism. Lowell, Transfer of Stock, § 112, note 2. The ground of that decision, as stated in the opinion, is as follows. The plaintiff "having distinct notice that the surrender and transfer of a former certificate were prerequisites to the lawful issue of a new one, and having accepted a certificate that she owned stock, without taking any steps to assure herself that the legal prerequisites to the validity of her certificate, which were to be fulfilled by the former owner and not by the bank, had been complied with, she does not, as against the bank, stand in the position of one who receives a certificate of stock from the proper officers without notice of any facts impairing its validity." Upon a review of the authorities in the opinion, it is said: "This review of the cases shows that there is no precedent for holding that the plaintiff, having dealt with the cashier individually, and lent money to him for his private use, and received from him a certificate in her own name, which stated that shares were transferable only on the books of the bank and on surrender of former certificates, and no certificate having been surrendered by him or by her, and there being no evidence of the bank having ratified or received any benefit from the transaction, can recover from the bank the value of the certificate delivered to her by its cashier."

In that case the president of the bank had left blank certificates of stock signed by him with the cashier, as, in the present case, the president of the railroad company had left similar blank certificates with the treasurer. At the trial of that case in the United States Circuit Court, a verdict was directed for the

defendant, on the ground that, "the plaintiff having had knowledge of the fact that Moores, upon whom she relied to have the stock transferred to her, was acting for himself as well as in his capacity of cashier, — that is, acting for the bank upon one side and for himself on the other, in reference to the matter of issuing this certificate, — she is not, in the judgment of this court, an innocent holder of the stock." *Moores* v. *Citizens' National Bank*, 15 Fed. Rep. 141.

We have decided in *Allen* v. *South Boston Railroad, ante*, 200, 204, that a purchaser of stock owes no positive duty to the corporation to see to it that the seller surrenders the old certificate and makes an assignment of the stock on the books of the company, but that it is the duty of the corporation which requires these things to be done to see that they are done before a new certificate is issued to the purchaser. The plaintiff, in the case at bar, knew that he was dealing with the treasurer of the defendant in his personal capacity as a borrower of money. If the by-laws of the company had provided that certificates of stock should be signed only by the treasurer, and if he were charged with the duty of attending to the transfer of stock and the issuing of certificates, any person lending money to him for his private use, and taking in his own name a certificate of the company's stock as collateral security, would reasonably be required to investigate the title of the treasurer to the certificate delivered, because in issuing such a certificate the treasurer would have a personal interest adverse to that of the corporation. An agent cannot properly act for his principal and himself when their interests are adverse, and any person dealing with an agent in a matter affecting his principal, and knowing that the interests of the agent are adverse to those of his principal, ought to be held to the duty of ascertaining that the acts of the agent are authorized by his principal. The difficulty in the present case is that these considerations are only partially applicable to it. It is on account of the danger that one officer may abuse his power to issue stock certificates that the by-laws of corporations usually require the certificates to be signed by at least two officers of the corporation. If one of these neglects his duty, or delegates the performance of it to the other, the safeguard intended by this requirement of the by-laws becomes inef-

fectual, and if one of these officers, in issuing a stock certificate, has a personal interest adverse to that of the corporation, a person dealing with him and knowing this may well be required to take notice that the rights of the corporation are not protected in the transaction to the full extent intended by the by-laws.

The decision of this case, we think, must depend upon the question whether it is shown that the plaintiff, in taking this certificate of stock under the circumstances set out in the agreed statement of facts, acted in good faith and with due care. We are of opinion that the facts were such that the plaintiff was reasonably put upon inquiry as to the title of Reed to the certificate of stock which he undertook to pledge, and that the plaintiff is to be affected with notice of whatever he might have found out, if he had made proper inquiry. As the plaintiff was not a purchaser of stock in the market, the usages of brokers in regard to the manner in which stock is transferred, as between the parties to a bargain and sale made through brokers, have no bearing upon the case. The plaintiff cannot rely upon any representations of Reed, because he knew that Reed was acting for himself in borrowing the money and in pledging the stock.

The seal of the corporation might well be presumed to be under the control of Reed for the purpose of affixing an impress of it upon the stock certificates, because he was one of the persons who were required to sign certificates of stock, and was the person who had the custody of the certificate and transfer books. The genuine signature of the president of the corporation upon the certificate was the only fact on which the plaintiff had a right to rely; but as the president was not attending personally to the issue of this certificate, it was evident to the plaintiff that Reed might possibly be using for one purpose a certificate signed by the president for another. The certificate was filled up in Reed's handwriting, and nothing whatever was exhibited to the plaintiff tending to show that Reed owned any stock, or that any transfer of stock had been made to the plaintiff by Reed, except the new certificate which was issued to the plaintiff after the bargain between him and Reed had been made.

We think that it is a safer and more reasonable rule to hold that a person taking in pledge a certificate of stock, newly issued

in his name by an officer of a corporation as security for the private debt of the officer, should be required to investigate the title to the stock, if the officer is one who has the power, either alone or with others, to issue stock certificates, than to hold that such a person can rely upon a certificate so issued to him in the absence of actual notice or knowledge that it has been fraudulently issued.    In the opinion of a majority of the court, the judgment entered for the plaintiff must be reversed, and there must be                              *Judgment for the defendant.*