### H. W. WILLIAMS V. TERMINAL HOTEL COMPANY.

No. 4424.   Decided February 17, 1926.

(280 S. W., 505.)

Corporate   Stock — Purchase — Transfer — New   Stock — Negligence   of Purchaser — Case Stated.

Plaintiff, who had agreed to purchase from the president of a corporation stock therein held by the latter, received and paid him for a new stock certificate issued in his, plaintiff's, name, signed by such president and the secretary of the corporation, and bearing the corporate seal. All the corporate stock had been sold and this was an over-issue, the new stock, as shown by the face of the certificate, being issuable only on surrender of the original certificates, their transfer to be shown by the company's books. By fraud of the president no former certificates were surrendered to authorize the issuance of the new, for which the corporation received nothing. *Held*, that the purchaser was negligent in making no inquiry as to the surrender or transfer on the books of the original certificates, but trusting this to their holder the president, whose interest in the transaction was adverse to the company, and that it, the corporation, did not become liable to him as a stockholder or otherwise by his purchase from its president of such new and illegal stock. (Pp. 283-299.)

Questions certified from the Court of Civil Appeals for the Second District, in an appeal from Tarrant County.

The Supreme Court referred the questions to the Commission of Appeals, Section B, for their opinion thereon, and here adopt same and direct it to be certified as their answer.

*Austin F. Anderson* and *McGown, McGown & Anderson,* for appellants.

When the defendant clothed H. W. Sterling with authority to issue certificates of its stock and permitted him to have access to its stock certificate book and corporate seal, and the said Sterling thereafter wrongfully used the authority with which he was clothed, and the instruments to which he had access, to defraud the plaintiff and defendant, the defendant is guilty of negligence and must bear the loss instead of the plaintiff, because the defendant, by its acts, enabled Sterling to perpetrate the fraud. Davey v. Newell Morse Royalty Co., 154 S. W., 151; Griswold v. Haven, 82 Am. Dec., 380, 25 N. Y., 595; Story's Agency (9th Ed.), Sec. 452, and Tome v. Parkersburg Rd. Co., 39 Md., 36, 17 Am. Rep., 540.

When the president of the defendant corporation presented the plaintiff with certificate No. 34, regular upon its face, signed by the corporate officers in the blanks prepared for their signatures and bearing the corporate seal of defendant corporation, certifying the plaintiff was the owner of 50 shares of stock in defendant corporation, the plaintiff had a right to rely upon the facts therein stated, and thereby implied, and was entitled to presume that all things required had been done previous to the issuance of said certificate. Allen v. South Boston Ry. Co., 150 Mass., 200, 22 N. E., 919; Davey v. Newell Morse Royalty Co., 154 S. W., 147; Garrett v. First State Bank, 192 S. W., 313; Strange v. H. & T. C. Ry. Co., 53 Texas, 162; Tome v. Parkersburg Rd. Co., 39 Md., 36; 17 Am. Rep., 540; Western Maryland Ry. Co. v. Franklin Bank, 60 Md., 36.

The act of the president, H. W. Sterling, in issuing the certificate, regular upon its face, was not the act of H. W. Sterling, president of the defendant corporation, as agent of the corporation, but was the corporate act of the defendant corporation. Cincinnati, N. O. & T. P. Ry. Co. v. Citizens Natl. Bank, 56 Ohio St., 351, 43 L. R. A., 777; Pollard v. Vinton, 105 U. S., 12, 26 L. Ed., 1000; Scotland County v. Thomas, 94 U. S., 682, 24 L. Ed., 219; Wilson v. Salamanca Township, 99 U. S., 499, 25 L. Ed., 330.

It was the duty of defendant's secretary, C. R. Roediger, after

he had been requested by H. W. Sterling to sign said certificate
No. 34 in blank and after he had been advised by the said
Sterling that he (Sterling) wanted to use said certificate to
transfer some of his (Sterling's) stock in defendant corpora-
tion, to see that the said Sterling surrendered his certificate
for a like amount of stock and that certificate so surren-
dered by Sterling was canceled and transfer of said stock
was made on the books of said defendant corporation, before he
(Roediger) signed said certificate No. 34 in blank and before
he delivered the same so signed to H. W. Sterling, and his
failure to require that these things be done constituted negli-
gence on the part of the defendant corporation for which it is
liable to plaintiff.    Allen v. South Boston Ry. Co., 150 Mass.,
200, 5 L. R. A., 716; Bank of Batavia v. New York, 106 N. Y.,
199; Davey v. Newell Morse Royalty Co., 154 S. W., 151; Fifth
Avenue Bank v. 42nd Street and Grand Street Ferry Ry. Co.,
63 Hun, 629, 33 N. E., 378, 19 L. R. A. 331, 33 A. S. R., 712;
Griswold v. Haven, 82 Am. Dec., 380, 25 N. Y., 595; Havens v.
Bank of Tarboro, 132 N. C., 214, 95 Am. St., 627; Hudson Trust
Co. v. American Linseed Co., 134 N. E., 178; Jarvis v. Manhat-
tan Beach Co., 75 Hun, 100, 51 Am. St., 727; N. Y., N. H. & H.
Ry. Co. v. Schuyler, 34 N. Y., 30; Strange v. H. & T. C. Ry. Co.,
53 Texas, 162; Titus v. Great Western Turnpike, 61 N. Y., 237;
Tome v. Parkersburg Branch R. Co., 39 Md., 36, 17 Am.
Rep., 540.

The defendant's negligence being the proximate cause of
plaintiff's injury, it is liable in damages to him for the purchase
price paid by him for the spurious certificate No. 34, to wit,
four thousand two hundred fifty and no/100 ($4,250.00) dol-
lars.    Baker v. Wasson, 59 Texas, 146; Davey v. Newell Morse,
Royalty Co., 154 S. W., 147; Green v. Caribou Oil Co., 178 Pac.,
950; Hobson v. Marsh, 124 Pac., 912; Strange v. H. & T. C.
Ry. Co., 53 Texas, 162.

*McLean, Scott & Sayers,* for appellees.

The Court did not err in concluding as a matter of law that
the defendant was not guilty of negligence, for the mere fact
that H. W. Sterling was president of the defendant corporation,
and, as such, had authority to issue certificates of its stock and
it permitted him to have access to its stock certificate book and
corporate seal, and the said Sterling thereafter, while dealing
in his individual capacity with the plaintiff, wrongfully used
the authority with which he was clothed and the instruments

to which he had access to defraud the plaintiff, in the manner shown by the evidence to have been done, is insufficient to render the defendant liable for such acts, the defendant in no manner participating therein, nor ratifying or concurring therein or receiving any benefit therefrom, and no facts being shown from which it could be justly inferred that the defendant could or should have foreseen that the said Sterling would so wrongfully conduct himself in the particulars aforesaid to the injury of the plaintiff. And the mere fact that the defendant, by its act in clothing the said H. W. Sterling with the official authority as its president, and thereby placed the said Sterling in a position of official authority whereby he was enabled, for his own private gain and in his own individual undertaking, to perpetrate a fraud upon the plaintiff, is insufficient in law to render this defendant, as contended by the appellant, liable to plaintiff under the theory that the defendant was negligent, and the trial court correctly held, under the facts of this case, that the defendant was not guilty of negligence. Moores v. Citizens National Bank, 111 U. S., 156, 28 L. Ed., 385; Farrington v. South Boston Ry. Co., 150 Mass., 406, 5 L. R. A., 849, 23 N. E., 109.

The trial court did not err in concluding as a matter of law that the plaintiff was placed upon inquiry as to whether the stock of H. W. Sterling had been properly canceled and transferred on the books of said corporation, and in concluding, as a matter of law, that plaintiff was guilty of negligence for failure to make inquiry as to the cancellation and transfer of the stock of said Sterling, and in concluding as a matter of law that it was plaintiff's duty, in dealing with the said Sterling, to investigate the genuineness of said stock ('certificate) and the regularity of its transfer and issuance; because the plaintiff, while dealing with the said H. W. Sterling, knew and understood that he was dealing with said Sterling in his individual capacity and not in his capacity as president of the defendant corporation, and knew, and the law imputes knowledge to him, that he was dealing with one whose interests were adverse to those of this defendant; and he had not at that time purchased or in any manner acquired from the said Sterling, or from anyone else, fifty shares of the stock in this defendant corporation; which fact, coupled with the previous conversation had between plaintiff and the said Sterling, and the other evidence and all the evidence in this record, was sufficient in law to place the plaintiff upon inquiry as to the validity of said certificate and of the title, if any, to the stock in the defendant

corporation that would be acquired by purchase thereof; and the plaintiff did not have the right to wholly rely upon said certificate and the fact that it bore the genuine signatures of the president and the secretary of the defendant corporation, with the seal of the defendant attached thereto; and plaintiff was not entitled to presume that all things required had been done previous to the issuance of said certificate; but plaintiff, by said certificate itself, wherein the same specifically stated on the face thereof that same was transferable only on the books of the corporation, in person or by attorney, on surrender of said certificate, and by all the other facts in evidence, was put upon inquiry, and the failure of the plaintiff to make such inquiry was negligence on his part and it became and was the duty of plaintiff, under all the facts in this case, in dealing with the said Sterling, in his individual capacity, to investigate the genuineness of said stock and the regularity of its transfer and issuance, and the plaintiff is chargeable with notice of all defects and fraud therein or in any manner connected therewith, which would have been disclosed by an investigation of the facts. Moores v. Citizens Natl. Bank, 111 U. S., 156, 28 L. Ed., 385; Farrington v. South Boston Ry. Co., 150 Mass., 406, 5 L. R. A., 849; 23 N. E., 109.

The act of the president, H. W. Sterling, in issuing the certificate to the plaintiff, regular upon its face, and which was a fraudulent over-issue of the stock in defendant corporation, under the facts of this case, did not constitute such act, the corporate act of this defendant, but was the fraudulent, wrongful and criminal act of the said H. W. Sterling, done for the purpose of benefiting himself in an individual transaction between him and the plaintiff, without authority from this defendant and without any participation therein by this defendant, and under such circumstances as that the plaintiff was placed upon inquiry, and his failure to make such inquiry and investigation constituted such negligence as precluded the plaintiff from any right of recovery herein.    Same authorities.

The evidence showing how and in what manner and under what circumstances the said H. W. Sterling procured the signature of C. R. Roediger, as secretary of this defendant corporation, was insufficient to show negligence on the part of this defendant or upon the part of the said C. R. Roediger as such secretary.    Same authorities.

No negligent act of the defendant was shown by the evidence to have been the proximate cause of plaintiff's injury for which the defendant would be liable and no facts were shown in evi-

dence sufficient to constitute legal liability of this defendant to plaintiff, under the facts of this case for the spurious, false, fraudulent and criminal acts of the said H. W. Sterling in the over-issue of the stock of this defendant corporation.

MR. PRESIDING JUDGE POWELL delivered the opinion of the Commission of Appeals, Section B.

This cause is before the Supreme Court upon the following certificate from the Honorable Court of Civil Appeals of the Second District:

"Prior to January 5, 1923, H. W. Sterling, president of the Terminal Hotel Company, went to Dr. H. W. Williams, president of the H. W. Williams Wholesale Drug Company, and told Dr. Williams that he and his wife were the owners of more than a majority of the stock of the Terminal Hotel Company, and that he controlled and managed it, and that he wanted to get Dr. Williams to buy some of his stock. He mentioned a number of friends of Dr. Williams who he said were going to take stock, and he expressed a desire to have Dr. Williams as a director. Dr. Williams agreed to consider the matter, and inquired of Mr. Ben H. Martin, of the F. & M. National Bank, as to Mr. Sterling's character. Mr. Martin told him that some well known banker from Texas had gone to Chicago, from which city Sterling apparently came, and that the result of his information was that Sterling was capable and trustworthy. This banker had written a letter to one of the other Fort Worth banks recommending Sterling very highly. On January 5, 1923, Sterling came back to see Dr. Williams with a certificate for fifty shares of stock, of the face value of $5,000, issued in the name of H. W. Williams, written out, signed by H. W. Sterling, president, and C. R. Roediger, secretary, and with the seal of the corporation affixed thereto. Dr. Williams paid for said stock $4,250, being 85c on the dollar.

"It seems that Sterling disappeared about this time, though the record is silent as to the reason or manner of his disappearance. But he does not appear personally in any of the transactions hereinafter stated. Dr. Williams demanded of the directors of the hotel company that they recognize his shares of stock, or that they repay him the amount he had paid therefor. It seems that the stock issued to Dr. Williams constituted an over-issue. That the stock owned by Sterling had been put up in the bank as security for a loan. The directors of the hotel company refused either to recognize the stock claimed to be

owned by Dr. Williams, or to pay him the value thereof, and suit was instituted by Dr. Williams to enforce one or the other of his demands. Upon a trial the court rendered judgment for defendant, and plaintiff has appealed.

"The court filed his findings of fact and conclusions of law, which are as follows:

### " 'FINDINGS OF FACT.

" 'I find that about January 1, 1923, H. W. Sterling was the president and C. R. Roediger was the secretary of the defendant The Terminal Hotel Company, a corporation. That on said date H. W. Sterling called at the office of the plaintiff H. W. Williams, who was then and there the president of H. W. Williams & Company, a corporation, and introduced himself to plaintiff, which was the first time they had met. That plaintiff's place of business was only two or three blocks from the office of the defendant Terminal Hotel Company. That H. W. Sterling told plaintiff that he owned a lot of stock in the Terminal Hotel Company, and that he absolutely controlled the stock in the hotel, and he wanted to sell some of his stock, that he, Sterling, had too much of it to carry and that if said Williams bought stock he (Sterling) wanted to make said Williams a director in said Company, and that plaintiff agreed to buy from the said H. W. Sterling $5,000.00 worth of such stock, on the basis of 85c per dollar share thereof, or a total of $4,250.00. That plaintiff understood that he was buying this stock from Sterling, as stock of the said Sterling, and that he was buying it from H. W. Sterling as an individual, for less than its par value.

" 'I further find that thereafter and before the deal was closed, the plaintiff inquired at the F. & M. Bank in the City of Fort Worth and made inquiry of Mr. Martin, vice president of said bank, in regard to this man Sterling, and of the stock and condition of the hotel, and was informed by Mr. Martin that some banker from Texas went to Chicago, and that he, Martin, very well knew this other banker, and that he, the other banker, had given a letter or written a letter to one of the Fort Worth banks recommending this man Sterling very highly; that the F. & M. Bank was lending money to Sterling on his stock in defendant corporation as security. That Martin did not make any representations to plaintiff as to information he had on the interest that Sterling had in the defendant corporation, and that this was the extent of the information the plaintiff had. That plaintiff made no further inquiry and did not call at the

Terminal Hotel Company's office or make any inquiry thereat in regard to whether or not Sterling owned the stock he was trying to sell plaintiff, and never made inquiry from any of its officers or stockholders as to whether or not any of their stock was ever sold; that he did not go through and look at any of the assets of defendant corporation to see what it owned; that Sterling showed him a statement of the assets of the defendant corporation, but plaintiff made no inquiry of any shareholder or officer of the defendant corporation to verify such statement, or made any check on it to determine if same was true or false, and that Sterling was a perfect stranger to plaintiff until he came to plaintiff's office on January 1, 1923.

" 'I further find that on said January 1, 1923, when plaintiff first met the said H. W. Sterling, plaintiff agreed to buy said stock. That on January 5th, 1923, the said H. W. Sterling returned to plaintiff's office and delivered to plaintiff stock certificate No. 34 for 50 shares of the capital stock of the defendant corporation, regular on its face, each share being of the par value of $100.00, which said certificate was introduced in evidence and is shown in the statement of facts as 'Exhibit No. 1.' That plaintiff in payment therefor delivered check in the amount of $4,250.00, payable on its face to H. W. Williams, and endorsed by him—'Pay to the order of Howard W. Sterling,' and that H. W. Sterling endorsed said check.

" 'I further find that the stock certificate so issued to the plaintiff and delivered to him by said H. W. Sterling was an over-issue of stock in the defendant corporation, and that the defendant corporation received no benefit therefrom. I further find that the directors of said defendant corporation kept the stock book of said corporation and the corporate seal thereof in the office of the defendant corporation, and that the president and secretary of said defendant corporation had access thereto. Upon agreed statements of counsel for plaintiff and defendant, the Court finds that said Sterling requested the secretary of defendant corporation, C. R. Roediger, to sign a blank certificate of stock, which he did so sign upon said request, the said Sterling stating at the time that he wanted to make transfer of some of his stock, and that without making such transfer upon the books of the defendant, the said Sterling filled out said certificate No. 34, and issued same to plaintiff H. W. Williams, and put the seal of defendant thereon, and delivered same to plaintiff without the knowledge or consent of said secretary of defendant, and that the said C. R. Roediger, secretary of said defendant, did not require the said Sterling to surrender any

of his said stock and did not cancel any of the certificates of stock of the said Sterling on the books of said defendant before he, said C. R. Roediger, signed said certificate No. 34, in blank and delivered same to said Sterling, as aforesaid.

"'I further find from the evidence that H. W. Sterling did not cancel any of his stock and transfer the same on the books of the defendant corporation, such stock so represented by him to be sold to the plaintiff, and that in all his representations to the plaintiff he was acting in his individual capacity, and not in the capacity of president of the defendant corporation, and that the said Sterling perpetrated a fraud upon the said plaintiff in causing the said plaintiff to believe that he was purchasing stock in the defendant corporation by buying the same from the said Sterling in his individual capacity.

"'I further find from agreement of counsel that the capital stock of the defendant corporation was $120,000.00 divided into 1,200 shares of $100.00 each, all of which had, before the dealings had between plaintiff and the said H. W. Sterling, been issued to persons other than the plaintiff, and was at said time valid outstanding stock and was held by parties legally entitled thereto.

"'I further find from agreement of counsel that at the time of said purported sale of stock in defendant corporation by H. W. Sterling to plaintiff, and which constituted an over-issue of stock therein, that the said H. W. Sterling owned in his individual capacity, 880 shares of the capital stock of defendant corporation, but that all of same had been theretofore issued to him and was legally held by persons other than either plaintiff or said Sterling.

### "'CONCLUSIONS OF LAW.

"'I conclude as a matter of law, that the defendant corporation was not guilty of negligence in permitting its stock book and corporate seal to be kept in its office where the president of said corporation could have access thereto.

"'I conclude that as a matter of law, the plaintiff in his dealings with the said Sterling as an individual under all the circumstances set out in the Findings of Fact hereinabove and in buying from the said Sterling stock represented to him by said Sterling to be owned by him as an individual, such stock certificate stating upon its face that it was transferable only on the books of the defendant corporation in person or by attorney, on the surrender of such certificate, that the plaintiff was placed upon inquiry thereby as to whether the stock of the said H. W.

Sterling had been properly cancelled and transferred on the books of the defendant corporation to the plaintiff, as was expressly stipulated on the face of said certificate as a condition precedent to give the same legality as stock in said defendant corporation, and his failure to make such inquiry under the facts and circumstances aforesaid was negligence on the part of plaintiff.

" 'I further conclude as a matter of law, that the said H. W. Sterling, by the over-issue of stock of the defendant corporation, and in selling the same to the plaintiff, and in his representations to the plaintiff, and while acting in his individual capacity, committed a crime by perpetrating a fraud upon said plaintiff, but that the defendant corporation did not in any manner participate therein, received no benefit therefrom, was not guilty of any negligence with reference thereto, and is not liable therefor.

" 'I further conclude as a matter of law, that the said H. W. Williams in his said dealing with said Sterling, the president of defendant company, did so at his peril and it became his duty to investigate and satisfy himself of the genuineness of said stock and its ownership and the regularity and legality of its transfer and issuance, did not purchase the said purported stock from the defendant corporation, and is not an innocent purchaser thereof for value, and that such purported stock so purchased by him from the said H. W. Sterling, because same is an over-issue of such stock, is fictitious and void, and of no force or effect as representing shares of the capital stock of said defendant corporation.

" 'I conclude as a matter of law, from the facts found from the evidence, and from all of the evidence that the plaintiff is not entitled to recover any damages whatever from the defendant corporation, and that the defendant is entitled to judgment that it go hence without day with its costs.'

"We have carefully considered this case, and have concluded that inasmuch as the authorities seem to be in conflict, and the particular question here involved seems to be one of first impression in Texas, and inasmuch as the question is one of importance, that it is advisable to certify to your Honors the following question:

"Did the trial court err in concluding as a matter of law, under a state of facts containing no material conflicts, that the plaintiff did not show any right to recover, either the stock in the company or the value thereof?

"In support of the court's judgment, appellee cites Farrington v. South Boston Ry. Co., 150 Mass., 406, 23 N. E., 109, 5 L. R. A. 849; Moores v. Citizens National Bank, 111 U. S., 156, 28 L. Ed. 385; and the Texas case of Strange v. H. & T. C. Ry. Co., 53 Texas, 162. Moores v. Citizens National Bank, supra, seems to be the leading case supporting the theory upon which the trial court acted.

"Appellant cities Davey v. Newell Morse Royalty Co., 154 S. W., 151, 169 Mo. App., 555, by the Springfield, Mo., Court of Appeals; Griswold v. Haven, 82 Am. Rep. 380, 25 N. Y., 595; Tome v. Parkersburg Ry. Co., 39 Md. 36, 17 Am. Rep. 540; Thompson on Corporations, Sec. 3248; Story's Agency, 9th Ed., Sec. 452; and also Strange v. H. & T. C. Ry. Co., 53 Texas, 162.

"Of course, both sides cite other cases, but the authorities mentioned represent the apparent conflict."

As stated by the Court of Civil Appeals in the certificate, the case of Moores v. Bank, supra, is "the leading case supporting the theory upon which the trial court acted." It is a great opinion by a great court. It was written by Justice Gray, and Justice Bradley alone dissented. He wrote no opinion in doing so. Unless this decision be overruled, then the question certified must be answered in the negative. We have given most careful consideration to the question before us. We have made quite an independent investigation into the law and have read perhaps one hundred cases covering the issuance and transfer of capital stock of corporations. We have reached the conclusion that the United States Supreme Court is correct in the Moores case and that the District Court correctly followed that decision in disposing of the case at bar.

In the Moores case the plaintiff sued a national bank to recover the value of a certificate of stock therein which the bank had refused to recognize as valid, although in usual form and executed by the president of the bank, acting in good faith, and by the cashier thereof, acting in fraud of the bank. The Circuit Court directed a verdict against the recovery by plaintiff and its judgment was affirmed by the United States Supreme Court. We think we can do no better than quote from Justice Gray's opinion as follows:

"The petition alleges 'that the plaintiff relied upon the representations of said Robert B. Moores, as cashier and officer of the defendant, that the said certificate was duly issued, and that the stock had been duly transferred by said Robert B. Moores to the plaintiff on the books of said bank; and said plaintiff relied upon said certificate of stock which she received as genuine and

valid for what it purported to be.' And at the trial the plaintiff relied upon the representations made to her by Robert B. Moores orally and in the letter enclosing the certificate and in his contract of guaranty, as well as upon those arising out of the certificate .itself. The two may be conveniently considered separately.

"His representations outside of the certificate may be first disposed of. The plaintiff dealt with Robert B. .Moores, and not with the bank. Her agreement was with him personally, and she lent her money to him for his private use. His representations to her that he owned stock in the bank, and that such stock had been transferred to her, were representations made by him personally, and not as cashier; and there is no evidence that the plaintiff understood, or had any reason to understand, that those representations were made by him in behalf of the bank. The duty of transferring his stock to the plaintiff before taking out a new certificate in her name was a duty that he, and not the bank, owed to the plaintiff. The making of such a transfer was an act to be done by him in his own behalf as between him and the plaintiff, and in the plaintiff's behalf as between her and the bank. .There is nothing, therefore, in his extrinsic representations, for·which the bank is responsible.

"The certificate which he delivered to the plaintiff was not in his name, but in hers, stating that she was entitled to so much stock, and showed, upon its face, that no certificate could be lawfully issued without the surrender of a former certificate and a transfer thereof upon the books of the bank. The by-laws, passed under the authority expressly conferred by the act of Congress under which the bank was organized, contained a corresponding provision, designed for the security of the bank as well as of persons taking legal transfers of stock without notice of any prior equitable title therein. Union Bank v. Laird, 2 Wheat., 390; Black v. Zacharie, 3 How., 483, 513. The very form of the certificate was such as to put her upon her guard. She was not applying to the bank to take stock, as an original subscriber or otherwise; but she was bargaining with Robert B. Moores for stock which she supposed him to hold as his own. She knew that she had not held or surrendered any certificate, and she never asked to see his certificate or a transfer thereof to her; and he in fact made no surrender to the bank or transfer on its books. She relied on his personal representation, as the party with whom she was dealing, that he had such stock; and she trusted him as her agent to see the proper transfer thereof made on the books of the bank. Having distinct notice that the

surrender and transfer of a former certificate were prerequisites to the lawful issue of a new one, and having accepted a certificate that she owned stock, without taking any steps to assure herself that the legal prerequisites to the validity of her certificate, which were to be fulfilled by the former owner and not by the bank, had been complied with, she does not, as against the bank, stand in the position of one who receives a certificate of stock from the proper officers without notice of any facts impairing its validity.

"Of the great number of cases referred to in the thorough and elaborate arguments at the bar, we shall notice only some of the most important. None of those cited by the learned counsel for the plaintiff affirm a broader proposition than this: A certificate of stock in a corporation, under the corporate seal, and signed by the officers authorized to issue certificates, estops the corporation to deny its validity, as against one who takes it for value and with no knowledge or notice of any fact tending to show that it has been irregularly issued."

The court then reviews numerous authorities which counsel claimed held to the contrary and proceeds to distinguish them from the case it had under consideration. Finally, the opinion contains the court's conclusion as follows:

"The general doctrine was stated with like limitations by this court in the case of Merchants' Bank v. State Bank: 'Where a party deals with a corporation in good faith—the transaction is not ultra vires—and he is unaware of any defect of authority or other irregularity on the part of those acting for the corporation, and there is nothing to excite suspicion of such defect or irregularity, the corporation is bound by the contract, although such defect or irregularity in fact exists.' 10 Wall. 604, 644.

"This review of the cases shows that there is no precedent for holding that the plaintiff, having dealt with the cashier individually, and lent money to him for his private use, and received from him a certificate in her own name, which stated that shares were transferable only on the books of the bank and on surrender of former certificates, and no certificate having been surrendered by him or by her, and there being no evidence of the bank having ratified or received any benefit from the transaction, can recover from the bank the value of the certificate delivered to her by its cashier."

Judge Gray has carefully restricted his decision to the very facts at hand. He does not say that the same rule would have been applied where the corporation itself, and not one of the stockholders personally, was selling its stock, on the exchange or

otherwise. Nor does he say that his decision would have been the same had the stock been in the cashier's name and not in the name of plaintiff. In other words, where a party purchases a stock certificate from a stockholder and has the original certificate transferred to him, a different rule might apply. But, in the Moores case, the new stockholder took the stock in her own name without even requiring a surrender of the old certificate which he told her he owned. It will be readily observed that the mere transfer on the books of the bank is of relatively minor importance as compared to the surrender of the old certificate itself. The latter is vitally important, because an outstanding stock certificate carries with it many rights. In what we shall say in this opinion, we do not wish to be understood as going beyond the very facts at hand. We decided but the one issue which is presented.

The facts in the case at bar, in material respects, are just like those which were present in the Moores case. In this case, the secretary of the corporation, in signing the new certificate to Williams, acted in good faith. He signed several certificates in blank and left them with Sterling, the president of the company, who told him he was going to sell some of his stock from time to time. Again, Williams trusted Sterling and did not require him to surrender his old stock certificates. Williams knew he was buying stock from Sterling personally and not from the corporation, acting through its president. So, we have everything just like the situation in the Moores case. And, Williams not having exercised the precaution to see that the very conditions in his certificate had been complied with, cannot hold the corporation liable for his own negligence. He knew that he could not fully own his stock until it had been transferred on the books of the corporation and the old certificate surrendered. This very clause was before him when he accepted his stock certificate.

After a very careful review of the authorities, we do not believe there are any which are really in conflict with the Moores case. They are distinguishable in one way or another. For instance, we do not think any of the cases cited by the Court of Civil Appeals are in conflict with the Moores case. Justice Gray discusses one of these cases, that of Tome v. Parkersburg Ry. Co., 39 Md., 36. In doing so, he said:

"In Tome v. Parkersburg Railroad, 39 Maryland, 36, there was no by-law requiring a surrender and transfer of old certificates before the issue of new ones, and no limit of the amount of stock to be issued; and it was not contended that there had

been any over-issue, or that the plaintiff had any notice of fraud or want of authority in the officers of the corporation. In Western Maryland Railroad v. Franklin Bank, 60 Maryland, 36, the certificates were not issued to the plaintiff, but bought in the market, without any notice of their having been fraudulently or illegally issued."

But, we have found one case by the Supreme Court of Massachusetts, Craft v. South Boston Ry. Co., 150 Mass., 200, 5 L. R. A., 716, which contains language in conflict with the holding in the Moores case. We quote from the Craft case as follows:

"The ground upon which a corporation is held liable to a bona fide purchaser for value, for false certificates of its stock issued under its seal, signed by the proper officers and apparently genuine, is that the certificates are statements by the corporation of facts which it is its duty to know, and which cannot well be known to the purchaser. It is the duty of the proper officers of the corporation to ascertain that its stock has been transferred in accordance with its by-laws and in accordance with law, before they issue a new certificate. The transfer which must be made in the books of the company must be made by the owner of the old certificate or by his attorney for him. The surrender of the old certificate must also be made by him or by his attorney. There is no provision that it shall be made by the purchaser as the assignee or attorney of the seller. If the seller undertakes with the purchaser to make the surrender and the transfer on the books of the company, the only thing left for the purchaser to do is to call upon the corporation for the new certificate. We see no good reason for holding that there is a duty on the part of the purchaser towards the corporation to see to it that the seller of stock surrenders his certificate and transfers it in the books of the corporation. That is the duty of the corporation towards both the seller and the purchaser when a new certificate is issued."

But, shortly after the Massachusetts Court wrote the Craft case, it also wrote, speaking through the same learned judge, the opinion in the case of Farrington v. South Boston Ry. Co., 150 Mass., 406, 5 L. R. A. 849. In the Farrington case, the court said they could not distinguish their situation from that of the Moores case. That being true, the court followed the opinion of Judge Gray and denied liability of the corporation. In doing so, the court makes a distinction between a person who buys from a stockholder generally and one who purchases from a stockholder who is also one of the two officers whose duty it is to sign

stock certificates for the corporation. The court seems to us to use strong reasoning in the following language:

"If the by-laws of the company had provided that certificates of stock should be signed only by the treasurer, and if he were charged with the duty of attending to the transfer of stock and the issuing of certificates, any person lending money to him for his private use, and taking in his own name a certificate of the company's stock as collateral security, would reasonably be required to investigate the title of the treasurer to the certificate delivered, because in issuing such a certificate the treasurer would have a personal interest adverse to that of the corporation.

"An agent cannot properly act for his principal and himself when their interests are adverse; and any person dealing with an agent in a matter affecting his principal, and knowing that the interests of the agent are adverse to those of the principal, ought to be held to the duty of ascertaining that the acts of the agent are authorized by his principal.

"The difficulty in the present case is that these considerations are only partially applicable to it. It is on account of the danger that one officer may abuse his power to issue stock certificates; that the by-laws of corporations usually require the certificates to be signed by at least two officers of the corporation. If one of these neglects his duty, or delegates the performance of it to the other, the safeguard intended by this requirement of the by-laws becomes ineffectual; and if one of these officers in issuing a stock certificate has a personal interest adverse to that of the corporation, a person dealing with him and knowing this may well be required to take notice that the rights of the corporation are not protected in the transaction to the full extent intended by the by-laws."

Concluding, the court said:

"We think that it is a safer and more reasonable rule to hold that a person taking in pledge a certificate of stock newly issued in his name by an officer of a corporation as security for the private debt of the officer should be required to investigate the title to the stock, if the officer is one who has the power, either alone or with others, to issue stock certificates, than to hold that such a person can rely upon a certificate so issued to him in the absence of actual notice or knowledge that it has been fraudulently issued."

The Craft case from the Massachusetts Court is the only one we find holding as it does and as already quoted by us. Ruling Case Law, Vol. 7, p. 275, Sec. 253, cites no other case in support of such a proposition.

From Corpus Juris, Vol. 14, p. 677, we quote as follows:

"So also a purchaser of corporate shares who receives new certificates therefor signed by the proper officers, although issued through their fraud, is, if he acts in good faith, entitled to be protected as a bona fide purchaser, and under some statutes a change in the register of members may be ordered by the courts without production of the certificates. It has been held, however, that a person to whom a new certificate is issued cannot rely on the presumption that the old certificate was surrendered and cancelled where he purchases from an officer of the corporation under circumstances which bind him to ascertain whether the new certificate is issued in lieu of others surrendered and cancelled."

The *general rule* of the text just quoted is supported by a citation of the Craft case supra, and the *exception* to the rule by the Moores and Farrington cases, supra.

Another case directly in line with the Moores case is that of Hall v. Road Company, 70 Ill., 673. In that case, it seems that one Benson, a stockholder, but not an officer of the company, sold his stock to. one who did not require surrender of the old certificate. The Supreme Court of Illinois held this purchaser of stock had no cause of action against the company. We quote from the court as follows:

"The certificates of stock issued by the company could only, by their own terms, be transferred on the books of the company on the surrender of the certificate itself. In fact, the secretary of the company had no power, unless authorized by its by-laws, to issue stock or transfer it, without an order of the board of directors. It is, no doubt, true, that the fact that the certificate is held by an individual is *prima facie* evidence that it was regularly issued. But that presumption is overcome by showing that it was issued without authority, which the jury have found was done in this case. These certificates of stock are unlike negotiable paper. They can only be assigned by an act of the company, and when the proposed purchaser applies to procure the transfer, he can always learn if there is a defense, or that the stock is illegal. If, when he applies, the directors order the transfer to be made, if not himself acting in bad faith, he becomes an innocent holder, and the company are thus estopped to deny that the stock thus issued is valid.

"If, as seems to be true in this case, original stock was outstanding for the same amount, and for which this was issued, and that was the only consideration, it would manifestly be invalid.

The stock first issued, until taken up, or at least canceled, would be still valid and binding."

Again, the court speaks in this language:

"The fifth instruction asked by appellant and refused by the court, does not accurately state the law. It was essential that the stock should have appeared by the records of the company, or by a by-law, to have been regularly issued. This was a suit by the person to whom the certificate was issued, and he was bound to know whether the stock was legally transferred, and his certificate informed him that such stock could only be transferred by record in the books of the company; and, whilst that certificate was *prima facie* evidence that it had been regularly transferred, still that was overcome by showing that it did not appear in the record of the proceedings of the company."

Still further, the court held:

"The directors of the company were the trustees of the shareholders, intrusted with the management of its affairs for their best interest. They had no right to issue stock to any but subscribers who had paid for it, nor to make transfers of stock unless by the consent of the former owner, and upon his stock being canceled. To do otherwise would be a fraud on the shareholders, and a mere doubt whether such a transfer would or not be right, would not be a justification for issuing double stock. They had no power to act, unless the person to whom the transfer was made had the legal right to the certificate."

The Illinois case, from which we have just quoted, along with Wright's Appeal, 99 Penn. St., 425, and the Moores case, supra, in all of which liability of the corporation was denied by those courts, are cited by Lowell in his splendid book on "Transfer of Stock," in support of the following text:

"Unless it is reasonably prudent under the circumstances for the purchaser to believe the representation, and to act upon it, he will have no right to redress. If, therefore, he has any reason, either from the constitution of the corporation, or the circumstances attending the purchase, to doubt that the representation in the certificate is true, the corporation will not be estopped to deny his title; and for this reason a purchaser is not protected when he buys stock in a corporation which is obliged to go through certain formalities before stock can be issued, if the certificate does not state that they have been performed, and if he has not made inquiries to a reasonable extent."

We have reviewed all the cases which we think bear directly upon the very question before us and we have shown the reasons

of those courts for their conclusions. As stated by the Court of Civil Appeals, this question is one of first impression in Texas. Counsel in the case do cite Strange v. R. R. Co., 53 Texas, 162. But, that case is not in point, except possibly for certain expressions upon a situation which the court says was not before it. In that case, one Browder owned stock in the railway company. On the face of his certificate was written:

"This certificate is transferable by assignment, and upon a surrender thereof to the directors a new certificate of proprietorship of said shares will be delivered to the assignee."

This certificate was transferred several times, finally going into one Strange, who then sued for damages when the company refused to recognize his stock. In the meantime, Browder had sold his stock to another without delivering the original certificate. Then, this stock under the sale just mentioned was transferred on the books of the company as it was sold from time to time and it went finally into one Hutchins.

Our Supreme Court, reversing the District Court, held that Strange was entitled to recover. In beginning its opinion, the court said:

"This case is one of first impression in this court, and we have endeavored to give it that full consideration in the light of authority, consistent with the pressure of other business, which its importance demands."

The court then stated that this was not a case where the stock was required to be transferred "on the books of the company." It went on to state that there are cases where, through some charter provision or by-law of the corporation, such procedure is required. And, when that is true, the court states definitely that a transfer of the stock on the books of the company is an "*essential condition*" to a complete transfer. We quote further from the court as follows:

"A provision for the record of the transfers of certificates, to be made upon the books of the company, as required by the act of December 19, 1857 (Pasch. Dig., Art. 4909), was intended for the benefit of the company, so that it might know, by ready reference, who were legal shareholders, who were entitled to vote at its meetings, receive dividends, etc., and to whom it could safely issue new stock. Bank v. Kortright, 22 Wend., 362; Broadway Bank v. McElrath, 2 Beasley (N. J.), 26."

In closing its opinion, the court held:

"On the contrary, it may be said that the company, by the terms of the certificate to Browder and of their own by-law,

were by the non-production of this certificate at the time they issued the new stock to Richardson, and who seems to have been its secretary, charged with notice that the original certificate was outstanding and may have then already passed, or might subsequently pass, into the hands of an innocent holder for value. This, we think, was, under the evidence in this case, such a dereliction of duty on the part of the company, and such breach of its contract, as contained in the certificate which it had permitted to be thrown upon the market, and to which it had invited confidence, as to make the company responsible to Strange, who held the possession of it, by the older title, for a valuable consideration and without notice of any defect."

The court gave controlling effect to the provision in the certificate governing the transfer of such stock. The company was charged with notice of it. The stockholder could rely upon it. The company had no right to issue new stock until the old was surrendered. It did so anyway and had to respond in damages. Briefly stated, the court, in the Strange case, held that the statute governing transfer of railroad stocks, just quoted by us, was for the benefit of the corporation itself; that, in issuing its stock it saw fit to prescribe a different method and waived its beneficial statute and was estopped thereafter to deny recovery to Strange, an innocent holder for value. We think, fairly construed, our own Supreme Court is in line with the doctrine announced in the Moores case and would require the transfer on the books and a surrender of the old certificate before holding a sale of stock consummated. In fact, it so stated as we have already shown.

But, it was not *necessary* for the court, in the Strange case, to determine the two exact questions before us. They are: (1) Is a purchaser of stock *at all times* required to see that he gets a good title; (2) is such a purchaser, in any event, justified in presuming that the officers issuing the new stock had performed their duty to the company in so doing when one of them was adversely interested in the closing of that very transaction?

The United States Supreme Court, and all others, recognize this rule:

"A certificate of stock in a corporation, under the corporate seal, and signed by the officers authorized to issue certificates, estops the corporation to deny its validity, as against one who takes it for value and with no knowledge or notice of any fact tending to show that it has been irregularly issued." Moores case, supra.

The very usages of trade require this rule. But, our statutes authorize stockholders of a corporation to adopt by-laws governing *transfer* of *stock* by one of their number. No one can contend that it is not highly important to avoid an over-issue of stock. The most effective method of doing this is to require that old certificates be surrendered before new ones take their place. In changing the personnel of its stockholders, the corporation itself is not primarily interested. Those chiefly concerned in those exchanges of stock are the parties thereto. And, one buying any kind of property must look to his title by making reasonable inquiry. Where a man buys stock, as Williams did, under a certificate such as we have here, he is advised at the time that it is not a completed transfer until the old stock is surrendered. Generally speaking, it is more prudent to buy the original certificate owned by the selling stockholder and have him execute an assignment thereon. Unless that precaution be exercised, one ordinarily cannot be said to have exercised due care. But, it may be said that the issuance of the new certificate would entitle one to presume that the necessary prerequisites had been complied with. In fact, this is contended here. Justice Gray, in the Moores case, says this is not justifiable, because the bank owes no duty to the purchaser to see that the old stock is surrendered. Upon this particular point, the Supreme Court of Massachusetts differs with the Supreme Court of the Nation, except under conditions that very court had before it in the Farrington case, supra. The Illinois case we have reviewed agrees with the United States Supreme Court. We do not think it necessary to settle this conflict. We are inclined to agree with Justice Gray in the Moores case and with the Illinois court. But, we shall make no holding upon this point until that very situation is before us.

Even if it should be held that one can purchase stock from a stockholder, not an officer of the corporation, without taking the precaution to see that it is duly transferred and the old certificate surrendered, we are still of the view that such a rule would *not apply where the purchase is made from one whose signature is necessary to the new certificate issued.* We cannot add anything to what the Supreme Court of Massachusetts itself has said in the Farrington case, supra, and which we have quoted. Where one knows that those signing the new certificate are not also acting in their private capacity and for their personal benefit, there is some ground for indulging the presumption that all prerequisites in the protection of the corporation have been com-

plied with. But, in this case, Sterling was acting in a double capacity. He was getting money for himself. He was selling his personal stock in the same transaction in which he issued the new certificate of stock for his company. We do hold that when one buys stock, conditioned as this was, from a stockholder of a corporation who is also an officer thereof authorized to sign the stock certificate, that such a purchaser must make reasonable inquiry to see that the by-laws of the company relating to the transfer of its stock have been complied with. He cannot escape this duty on the presumption that the company's officers have given it attention when one of them is adversely interested in the transaction. We do not believe we run counter to the proper interpretation of any of the cases in going this far. We go no further.

Any other rule than the one we have just announced will work a great hardship on those who own the genuine stock of the corporation. Before a stock certificate is valid, it is usually provided that it must be signed by two officers. One is a check against the other. Where one of them is acting in a double capacity, it does not seem to us to be right to permit a purchaser of stock to relieve himself of the duty of obeying the by-laws upon the mere presumption that this double capacity officer would look after the interests of the company in preference to his own. When such an officer decides to steal, he is frequently able to gain the confidence of his associate in the signing of stock and get hold of stock certificates duly signed and seal the same. Where neither of the officers issuing the stock is personally interested in its sale or its pledge, their first thought is for the interests of the company they are serving. We do not often find where an ordinary stockholder is able to get new stock issued without surrendering the old. The chief opportunity for injury to the genuine stockholders is where we have just such a situation as confronts us in this case. We think the courts should assist the holders of the genuine stock to protect the value of their property by requiring those buying the personal stock of those issuing the new stock to see that they are acquiring a good title thereto and that the by-laws of the corporation have been complied with.

We recommend that the question certified be answered in the negative.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.                     *C. M. Cureton,* Chief Justice.